UNITED STATES of America, Appellee,

v.

John Gregory LAMBROS, Appellant.

No. 94–1332.

United States Court of Appeals, Eighth Circuit.

Submitted May 18, 1995.

Decided Sept. 8, 1995.

Colia Ceisel, St. Paul, MN, argued, for appellant.

Douglas Ray Peterson, Assistant U.S. Attorney, Minneapolis, MN, argued, for appellee.

Before WOLLMAN, Circuit Judge, ROSS, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

WOLLMAN, Circuit Judge.

John Gregory Lambros, who was extradited from Brazil, appeals his conviction of four cocaine charges on various grounds. Because the district court erred in applying a mandatory life sentence on one count, we remand.

## I

Lambros was indicted in May 1989 of multiple counts stemming from a cocaine importing conspiracy. Count I, the overarching conspiracy-to-distribute count under 21 U.S.C. §§ 841(a)(1), 846 charged a conspiracy end date of February 27, 1988. The other three counts of possession-with-intent-to-distribute charge conduct in July, October and December of 1987.

Lambros fled the country, and was arrested in Brazil in May 1991. After contesting extradition, he was remanded to United States custody in June 1992, and convicted of all four counts in January 1993. Lambros

received concurrent sentences of life on Count I, ten years each on Counts II and III, and 30 years on Count IV.

## II

■ The district court sentenced Lambros to life on the Count I conspiracy charge because it believed a life sentence was mandated by 21 U.S.C. § 841(b)(1)(A)(ii) (hereafter section 841). The government does not dispute Lambros's argument that the required life sentence of section 841 did not take effect until November 1988, well after the February 1988 conspiracy end date charged in the Count I indictment. Under well-known principles of *ex post facto* law, because the mandatory life sentence was not in place at the time of the crime charged, the district court erred in applying it. (Lambros concedes that the version of § 841 in place at the time of his conspiracy, though not requiring a life sentence for his crimes, does allow it.) Accordingly, Lambros must be resentenced on Count I.

■ Lambros's further argument that he may be eligible for parole because parole was originally available under the version of section 841 in force at the time of his crime is unavailing. Though Lambros's conspiracy started before the Sentencing Guidelines abolished parole in November 1987, we have held that any conspiracy completed after the Guidelines took force is governed by them. *United States v. Tharp*, 892 F.2d 691, 695 (8th Cir.1989).

## III

■ Before ultimately sentencing Lambros to the mandatory life sentence it understood to override the regular Sentencing Guidelines range on Count I, the district court calculated Lambros's Guidelines sentence range by applying the career offender provision of USSG § 4B1.1. R. at 10; *see* PSR at 7–8. Lambros objects to applying the career offender provision to a conspiracy crime, citing *United States v. Mendoza–Figueroa*, 28 F.3d 766 (8th Cir.1994). The panel opinion in *Mendoza–Figueroa* has been vacated, and our recent en banc decision in that case makes clear that a conspiracy can

trigger career offender treatment. *United States v. Mendoza–Figueroa*, No. 93–2867, slip op., 1995 WL 523166 (8th Cir. Sept. 7, 1995) (en banc).

■ As to the other counts, Lambros objects to application of the career offender provision on the grounds that the applicable 1987 version of USSG § 4B1.1 requires that the offense being sentenced be for "trafficking in a controlled substance," and that Lambros's convictions of cocaine possession with intent to distribute do not amount to trafficking offenses. (The government correctly notes that of the three possession counts, the district court only applied the Guidelines to Count IV, since Counts II and III occurred before the Guidelines took effect. Record at 8; *see* PSR at 7.)

Ten weeks after the "trafficking in a controlled substance" clause went into effect the Sentencing Commission eliminated it, and specified instead that to trigger USSG § 4B1.1, the crime must be "a controlled substance offense." USSG App. C, am. 47 (effective Jan. 15, 1988). This was a clarifying rather than a substantive change to USSG § 4B1.1. *Id.* Courts are bound to use the Guidelines in place at the time of sentencing, including any clarifying changes not fundamentally inconsistent with the Guidelines. USSG § 1B1.11; *see Stinson v. United States*, — U.S. —, —, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993). As Amendment 47 wrought no such fundamental change in the Guidelines, the career offender provision can be applied to Lambros. *See United States v. Baker*, 961 F.2d 1390, 1391 (8th Cir.1992) (holding under post-Amendment 47 language that possession with intent to distribute triggers career offender); *United States v. Auman*, 920 F.2d 495 (8th Cir. 1990) (subsequent history omitted).

## IV

■ Lambros alleges that he was tortured during his thirteen months in Brazilian prison while contesting extradition to the United States, and that American officials were complicit in this torture. In various hearings below, Lambros has testified extensively as to his mistreatment in Brazil. Testimony on

the topic of Lambros's treatment in Brazil was also given by two DEA agents who served there. The record also includes persuasive indirect evidence that Lambros was not mistreated in Brazil: a psychologist at the competency hearing concluded that Lambros's symptoms were not consistent with torture.

We do not foreclose the possibility that vicious conduct by American officials could amount to a violation of a criminal's due process rights. Those decisions discussing such a situation generally require a specific fact finding by the district court or at least a factual record sufficient to allow the appellate court to determine with confidence whether torture occurred. *E.g., United States v. Wilson*, 732 F.2d 404, 411 (5th Cir.) (finding that facts showed no violence), *cert. denied*, 469 U.S. 1099, 105 S.Ct. 609, 83 L.Ed.2d 718 (1984); *United States v. Fielding*, 645 F.2d 719, 723–24 (9th Cir.1981) (district court made findings as to mistreatment and United States involvement); *United States v. Lira*, 515 F.2d 68, 70–71 (2nd Cir.) (specific fact finding on existence of torture preferred, but where evidentiary hearing turned up no evidence of government complicity, torture claim rejected), *cert. denied*, 423 U.S. 847, 96 S.Ct. 87, 46 L.Ed.2d 69 (1975); *see also Rochin v. California*, 342 U.S. 165, 172–74, 72 S.Ct. 205, 209–11, 96 L.Ed. 183 (1952) (brutal government conduct can violate due process).

Although a specific finding on the question whether Lambros had been tortured with American complicity would have been preferable, the state of the record obviates the need for remand. First, as discussed below, Lambros's testimony is unreliable because he perjured himself in other regards at trial, and it is also fantastic. (For instance, Lambros maintains that he was held in the same Brazilian cell where the mistreatment alleged in *United States v. Toscanino*, 500 F.2d 267 (2nd Cir.1974), occurred, and even asserts that he met Toscanino there.) Second, two DEA agents testified that Lambros's arrest was peaceful and that they had no knowledge of any subsequent mistreatment. Third, and most telling, a psychologist's evaluation prepared for the competency hearing below declared that:

> [Lambros's] symptoms are completely fictitious and are orchestrated in a deliberate attempt to circumvent the current legal process. In addition, Mr. Lambros takes great pleasure in antagonizing the legal system. It is highly likely that further court proceedings will involve much manipulation on the part of Mr. Lambros.

This is a case like *Lira*, 515 F.2d at 70–71, in which the record contains persuasive evidence that torture with American complicity never occurred. Indeed, we note that Lambros's counsel at oral argument conceded that the United States Attorney's office in this case went to great lengths to assure itself that Lambros was not mistreated in Brazil.

## V

■ As to the matter of Lambros's competence to stand trial, Lambros argues he is delusional in that he believes electronic devices were implanted in his brain during his captivity in Brazil, and that Brazilian or American government operators can thereby control his movements and speech. Lambros implies that this control, or in a less ludicrous vein his belief in it, renders him incompetent to assist in his defense.

Lambros's implant claim led to a hearing before a magistrate judge to evaluate Lambros's mental health. Having thereby received substantial medical testimony as to Lambros's ability to understand the charges he faced and his ability to assist in his own defense, the district court found Lambros competent regardless of whether or not he sincerely believed in the implants. There is no reason to disturb the district court's finding on competence. Far from being incompetent, Lambros has always fully understood the nature of his crimes and the punishment at stake, and is in some ways an accomplished advocate for his own interests. Indeed, it is ironic that even while seeking a declaration of incompetence Lambros himself argued capably below several times, and in this court submitted an able supplemental pro se brief, including a lucid section on incompetence explaining exactly how his

702

claimed paranoid delusions affected his defense.

## VI

■ Lambros also argues that the district court's finding of perjury and resulting obstruction of justice enhancement was improper because the court did not specifically find the perjury to have been willful, as required by USSG § 3C1.1. While it would have been preferable for the district court to have made an overt willfulness finding, *see United States v. Dunnigan,* —— U.S. ——, ——, 113 S.Ct. 1111, 1117, 122 L.Ed.2d 445 (1993), in this case a review of the record shows unequivocally that Lambros's trial testimony was insincere, cynical and calculated—willful perjury of the most odious kind.

For the foregoing reasons, we vacate the sentence imposed on Count I and remand for resentencing on that count. In all other respects the convictions and sentences are affirmed.[1]

---

1. Lambros's motion to file a supplemental brief is granted; all other motions by Lambros to file supplemental material, including the one filed on August 25, 1995, are denied because of their exclusive focus on his irrelevant electronic implant claim.