**Walter PAREDES, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

No. 97 C 2800.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 3, 1997.

Walter Paredes, Pekin, IL, Pro Se.

Dean J. Polales, United States Attorney's Office, Chicago, IL, for Respondent.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

This matter is before the court on petitioner Walter Paredes' motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence.

Motion denied.

## I. BACKGROUND

In 1991 Petitioner Walter Paredes was found guilty by a jury for distributing cocaine in violation of 21 U.S.C. § 841(a)(1).

Paredes was sentenced to 360 months in prison.

Apparently not pleased with trial counsel (who, incidentally, was privately retained by Paredes), Paredes sought new counsel following the guilty verdict. Federal Defender Luis Galvan was appointed to represent Paredes at sentencing—he also represented him on appeal. After filing a brief on appeal, however, Galvan, with a signed waiver from Paredes, voluntarily dismissed the appeal. It appears Galvan and Paredes sought to pursue an ineffective assistance of trial counsel claim on appeal, but, realizing that evidence outside of the record was necessary to support the claim, decided that the claim was better suited for a collateral attack under 28 U.S.C. § 2255.

This matter is now before the court on Paredes' collateral attack under § 2255.

## II. DISCUSSION

Paredes offers numerous arguments attacking his conviction and sentence. Each argument will be addressed in turn.

Prior to addressing the arguments, however, the court will first discuss the purpose of a § 2255 motion and the procedural steps that must be complied with in order to grant the reviewing court the authority to entertain the issues raised in the motion.

Relief under § 2255 "is reserved for extraordinary situations." *Prewitt v. United States,* 83 F.3d 812, 816 (7th Cir.1996). Indeed, a criminal defendant may attack the validity of his sentence under § 2255 only if:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255. Importantly, however, "[a] § 2255 motion is neither a recapitulation of nor a substitute for a direct appeal." *Olmstead v. United States,* 55 F.3d 316, 319 (7th Cir.1995). This means that:

> [a]n issue not raised on direct appeal is barred from collateral review absent a

showing of both good *cause* for the failure to raise the claims on direct appeal and actual *prejudice* from the failure to raise those claims, or if a refusal to consider the issue would lead to a fundamental miscarriage of justice.

*Prewitt,* 83 F.3d at 816.

With these principles in mind, the court will address each of Paredes' arguments.

## A. *Ineffective Assistance of Appellate Counsel*

■ First, Parades argues that appellate counsel Galvan provided ineffective assistance because he dismissed Paredes' appeal; thus, Paredes lost his only opportunity to have his case scrutinized by a higher court.

The court disagrees.

■ When a defendant tells his lawyer to appeal "and the lawyer dropped the ball, then the defendant has been deprived, not of effective assistance of counsel, but of *any* assistance of counsel on appeal." *Castellanos v. United States,* 26 F.3d 717, 718 (7th Cir.1994). Thus, the failure to file an appeal when requested by the defendant—abandonment—is a *per se* violation of the Sixth Amendment. *Id.* Paredes believes that his claim falls into the "abandonment" category, thus, a *per se* violation of the Sixth Amendment ensued. The court doesn't think so.

■ To qualify as a *per se* violation, the defendant must actually instruct counsel to appeal. *See Castellanos,* 26 F.3d at 719–20. Here, Paredes never instructed appellate counsel to appeal. In fact, Paredes signed a waiver acquiescing to the dismissal of the appeal.[1] *See Johnson v. United States,* 838 F.2d 201, 203 (7th Cir.1988) (as long as defendant files a waiver, criminal appeals can be dismissed). The waiver states that Paredes read the motion to dismiss filed before

the appellate court and concurred "in everything that is said in that motion." The motion noted that additional evidence outside of the record needed to be gathered before the ineffective assistance of trial counsel claim could proceed.[2]

Paredes' first argument is a loser.

## B. *Ineffective Assistance of Trial Counsel*

■ Paredes offers numerous instances of the alleged ineffective assistance of trial counsel. As noted, however, because Paredes failed to raise the issue on appeal he is barred from raising it collaterally, unless he can establish good cause and prejudice for this failure. Although trial and appellate counsel were not the same—thus, appellate counsel could argue on direct appeal that trial counsel performed ineffectively—good cause includes the ineffective assistance of trial counsel when it is necessary to establish the claim by resorting to evidence outside of the trial record. *See McCleese,* 75 F.3d at 1178. Such a claim is properly raised for the first time in a § 2255 motion regardless of the fact that his appellate and trial counsel were not the same. *Id.*

Generally, to establish ineffective assistance of counsel one must satisfy two prongs: (1) that counsel's performance fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced the outcome of the proceedings. *See United States v. Cooke,* 110 F.3d 1288, 1299 (7th Cir.1997) (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The defendant bears a "heavy burden" when attempting to establish an ineffective assistance claim. *Drake v. Clark,* 14 F.3d 351, 355 (7th Cir.1994). Indeed, there is a "strong presumption" that counsel rendered reasonably effective assistance. *Unit-*

---

1. Paredes argues that he failed to comprehend the consequences of signing the waiver. Paredes claims that he thought that he was only momentarily dismissing his appeal and that it would be reinstated at a later date. The plain language of the waiver says otherwise, however. The second paragraph of the waiver states explicitly that he waived *"all* rights to object or raise *any* points on *direct appeal* from the final judgment *in this case."* (emphasis added).

2. When an ineffective assistance of counsel claim depends on evidence outside of the trial record, such claims, generally, are properly raised for the first time in a § 2255 motion, not on direct appeal. *McCleese v. United States,* 75 F.3d 1174, 1178 (7th Cir.1996).

*ed States v. Moralez,* 964 F.2d 677, 683 (7th Cir.1992).

With the *Strickland* standard in mind, the court will address each of Paredes' alleged ineffective assistance of trial counsel claims. Prior to that, however, the court needs to review one aspect of this case.

At trial, it was established that Paredes was both a drug dealer and a ticket scalper. It was the government's position that Paredes—in an attempt to disguise his drug deals as ticket sales—referred to one kilogram of cocaine as a "ticket" when arranging a transaction. For example, Paredes would say something like "I have five tickets available." This meant, to his buyers, that he had five kilograms of cocaine to sell. Paredes' primary defense was that the evidence against him had nothing to do with cocaine; rather, it merely established that he was a ticket scalper. In other words, he argued that "tickets" meant tickets (to various events), not kilograms of cocaine.

Additionally, when discussing the purchase price for the cocaine, a thousand dollars was referred to as one dollar. Thus, if Paredes intended to sell a kilogram of cocaine for $20,500.00—which is what the evidence established as the price—Paredes would say the price was $20.50.

With that in mind, onto the instances of alleged ineffective assistance.

### 1. Telephone records

■ At trial, the government presented evidence of a taped telephone conversation of Paredes and an informant. Apparently, twenty seconds of unrecorded conversation at the beginning of the tape were "missing." The government asserted that the "missing" twenty seconds was the result of a "glitch" at the beginning of the tape due to the activation of the recorder. After trial, Paredes acquired certain telephone records.[3] The telephone records establish that two to three minutes of the conversation were missing, not twenty seconds.[4]

Paredes argues that if his trial counsel would have investigated the telephone records, he would have learned of the missing two to three minutes. He claims the missing two to three minutes were critical to his case for two reasons. First, Paredes argues that the missing conversation would have buttressed his defense that he was dealing scalped tickets, not cocaine. Second, he argues that because there was so much time missing, the suspicions of the jury would have been raised with respect to the validity of the government's case.

As to his first argument, Paredes neglects to state what was said during the missing minutes. Certainly, he should know, he was a party to the conversation. He merely offers the self-serving statement that it would have bolstered his defense. That is not good enough. *See United States v. Ashimi,* 932 F.2d 643, 650 (7th Cir.1991) ("A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.").

Furthermore, the jury was well aware of the substance of Paredes' defense. He strenuously argued and even presented several witnesses to attest to his ticket scalping business. He argued over and over again that his reference to "tickets" was not kilograms of cocaine, but actual tickets. The jury didn't buy it. The court is highly skeptical that three minutes of conversation—particularly considering the fact that Paredes neglected to tell the court what was said—would have had even a slight impact on their analysis.

Regarding his second argument, Paredes' speculation that the jury would have been suspicious because of so much missing conversation is just that—speculation. Once the jury concluded—which they obviously did—that Paredes' reference to "tickets" was really a reference to kilograms of cocaine, the evidence against him was overwhelming. If

---

3. Based on the presentation of Paredes' argument, it appears he did not acquire the telephone records until sometime after the trial, *i.e,* the records were not part of the trial record. The government apparently agrees.

4. The government does not dispute that the records establish that three minutes were missing instead of twenty seconds.

Paredes is suggesting that the jury's conclusion would have changed if they knew there were three minutes missing instead of twenty seconds, the court cannot adopt that speculation.

### 2. Uncalled witnesses

■ Next, Paredes argues that his trial counsel failed to call two witnesses who would have testified that they saw five tickets to a Chicago Blackhawks hockey game in his possession near the time he was arrested for drug distribution.[5] Thus, supporting his position that the five "tickets" he referred to during the recorded conversation were actually tickets, not five kilograms of cocaine.

Paredes' position ignores the abundance of evidence that his reference to "tickets" was really a reference to kilograms of cocaine. For instance, if there was only $102.50 at issue for the five Blackhawks tickets—instead of $102,500 for five kilograms of cocaine—why did Paredes act so frantically when he thought he was being watched or followed? Second, why did Paredes make such elaborate, complex plans to pick up a mere $102.50? Paredes' position is ridiculous. The evidence establishing his guilt was overwhelming.

### 3. Failure to investigate critical facts

■ Paredes claims that his trial attorney failed to investigate critical facts, such as: (1) the fact that the street in front of the informant's home was recently asphalted, thus, he utilized the alley not to be in a more private location, but to prevent damage to the paint of his car; (2) the fact that his daughter was hospitalized on the date stated in the recording; and (3) the fact that his statements in the recorded conversations regarding his whereabouts were true.

With respect to "critical facts" two and three, the court does not understand the relevance of those facts with respect to the issues at trial. Paredes offers no explanation. Regarding "critical fact" one, the fact that Paredes utilized the alley to protect his car—assuming that was the real reason—misses the point. This case was about a drug deal between Paredes and an informant. If Paredes thinks the jury's decision would have been influenced by his argument that he used an alley to protect the paint of his car, he is ignoring an abundance of evidence against him.

### 4. Fingerprint analysis

Paredes argues that the fingerprint analysis should have been "compared with the fingerprints of certain and specific individuals." Paredes fails to state how this could have impacted his case. The evidence was clear that his fingerprints were identified along with the fingerprints of unknown individuals on the case carrying the cocaine.

### 5. Chain of custody

Paredes states that he directed trial counsel to investigate whether the government broke the chain of custody. This issue was discussed fully at trial.

### 6. Unidentified individual

Next, Paredes argues that he requested trial counsel to interview an individual who Paredes says would have testified to giving the informant the same amount of cocaine that Paredes allegedly gave the informant. Paredes fails to identify this individual, however. *See Ashimi*, 932 F.2d at 650 ("[S]elf serving speculation will not sustain an ineffective assistance claim.").

### 7. Bar maid

Paredes argues that the testimony of an unidentified bar maid would have helped his case. Once again, though, Paredes fails to identify the witness. *See Ashimi*, 932 F.2d at 650 ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.").

### 8. Discovery material

Next, Paredes argues that he was not able to view discovery material. First, Paredes' attorney reviewed all the discovery material. Second, Paredes fails to state how his view-

---

5. The two witnesses submitted affidavits.

ing of the discovery material would have altered the jury's decision. He reargues his point regarding the missing three minutes of conversation evidenced by the telephone records discussed in part B(1) of this opinion; but, the court already rejected that argument.

### 9. Counsel's preparation

Paredes argues that his trial attorney failed to devote an adequate amount of time to his case due to the burden of other cases. This case was continued on more than one occasion to allow counsel the necessary preparation time. Furthermore, the record is replete with Paredes' assertion that he desired trial counsel to remain in this matter well aware of counsel's other cases.[6]

### C. *Suppression of Evidence*

Paredes argues that the government suppressed evidence that was material to his defense. He claims evidence was suppressed regarding: (1) "the severe break in the chain of custody;" (2) the missing two to three minutes of the recorded conversation (discussed in part B(1)); and (3) dialogue being added to the transcripts.

First, the "chain of custody" issue was explored at trial and there was no, nor is there, any evidence that the government suppressed evidence. Second, there is no evidence that the government suppressed evidence regarding the missing two to three minutes of recorded conversation. Furthermore, Paredes fails to state what was said during these minutes; thus, how is the court to know whether the "missing" information was material to his case. He merely asserts that his case would have been bolstered. As discussed earlier, such self-serving speculation is not good enough. Third, Paredes has absolutely no evidence that the transcripts were altered or tampered with.

### D. *Prosecutorial Misconduct*

#### 1. Perjured testimony

Paredes argues that the government utilized perjured testimony as a result of a

discrepancy in a special agent's report and his testimony at trial. The issue was explored fully at trial by defense counsel. The special agent explained the discrepancy; and, the jury obviously believed him. There is no evidence that the government utilized perjured testimony.

### 2. Transcripts of recorded conversations

Next, Paredes argues that his late receipt of the transcripts of the recorded conversations somehow prejudiced his case. He fails to state how he was prejudiced. It appears that Paredes is suggesting that the transcripts were inaccurate. But he fails to state what parts of them were inaccurate. The recorded conversations were played to the jury and the jury utilized the transcripts to follow the conversation. How could he have been prejudiced by this?

### 3. "Planted" informant

■ Paredes argues that an incarcerated informant provided information to the government that Paredes was considering taking the stand in his defense. Paredes does not state how such conduct violated his "rights." Assuming the truth of the allegations and the government did in fact receive information from an informant that Paredes was considering taking the stand in his defense, the court concludes that Paredes must show prejudice from the "leaked" information. *See United States v. Morrison,* 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981); *Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977); *United States v. Ofshe,* 817 F.2d 1508, 1516 (11th Cir.1987) ("Had there been demonstrable evidence of prejudice, we would be compelled to reverse.").

Paredes apparently claims that he was prejudiced by the informant's tip to the government because he was hoping to catch the government off guard. He believes the element of surprise would have damaged the

---

**6.** Paredes also argues that he was prejudiced by "the denial and absence of counsel during a critical stage of the adversarial process." He essentially rehashes his argument that counsel

did not adequately prepare for his case due to the burdens imposed upon counsel regarding other cases. That argument also fails for the reasons stated in B(9).

government's case. Paredes, however, fails to state how the government's case would have been damaged. Thus, he failed to establish prejudice.

Furthermore, prior to trial, Paredes signed a proffer admitting that he supplied five kilograms of cocaine to the informant—not the incarcerated informant. The proffer, however, by its plain-language, was admissible at trial to impeach Paredes if he testified. Thus, if Paredes would have testified at trial, the jury would have heard that he previously admitted to supplying the informant with the cocaine.

Regardless of when the government learned that Paredes was contemplating testifying at trial, the proffer would have come in against him. If Paredes believes that the government would have overlooked the proffer because they were caught off guard by Paredes' decision to testify, he is engaged in playful speculation. Indeed, in all likelihood, the government was hoping he would testify so that the proffer would be admitted into evidence.

Moreover, a prosecutor must always anticipate that a criminal defendant—especially one facing a long term of imprisonment—will decide (probably near the end of the trial) to take the stand guided by a "what have I got to lose" rationale. Accordingly, Paredes would not have caught anyone off guard if he would have testified in his defense. Assuming the allegations as true, there is no prejudice here.

### E. *Tainted Trial Record*

Paredes rehashes his "telephone records" argument (see B(1)) and claims that the missing dialogues produces an incomplete record. He claims that the missing dialogue bolsters his case, but, he never says what

was discussed in those missing minutes. The court finds, once again, that Paredes failed to establish prejudice.

### F. *Multiple Assessments*

Regarding the instant case, Paredes was sentenced to 360 months in prison and assessed $50.00 pursuant to 18 U.S.C. § 3013. In an unrelated case before another federal court, Paredes was sentenced to 48 months in prison and assessed $50.00 for soliciting a murder. The sentences run concurrently.

For some indecipherable reason, Paredes believes that somehow the court violated his constitutional rights regarding the imposition of two § 3013 assessments and to correct this injustice the court must vacate—since he already completed his 48 month sentence—the remaining term of the 360 month sentence.

The court fails to comprehend his reasoning. However, the court can confidently state that Paredes' position is ludicrous and warrants no further discussion.

### G. *Sentencing Issues*

Paredes claims that sentencing counsel was ineffective for failing to raise a couple of issues at sentencing. The court disagrees.

#### 1. The applicability of U.S.S.G. § 2X1.1

■ First, Paredes argues that U.S.S.G. § 2X1.1—which covers attempt, solicitation, or conspiracy (not covered by a specific offense guideline)—was applicable; thus, his total offense level should have been reduced accordingly.

Assuming Paredes gets past the procedural default for not raising the issue on appeal; assuming this issue is cognizable by way of a § 2255 motion;[7] and assuming Paredes is

---

7. Beginning in *Scott v. United States,* 997 F.2d 340 (7th Cir.1993), the Seventh Circuit began to question whether any errors under the sentencing guidelines were cognizable in a § 2255 motion. In *Durrive v. United States,* 4 F.3d 548 (7th Cir.1993) and *Martin v. United States,* 109 F.3d 1177 (7th Cir.1996), the court elaborated further. *See Gonzalez v. United States,* 967 F.Supp. 326, 332–33 (N.D.Ill.1997) (Alesia, J.) (discussing *Scott* and its progeny). The government does not appear to be aware of this line of cases. Indeed, this court has analyzed numerous § 2255 mo-

tions challenging the application of certain guideline provisions and—like the instant case—the government fails to discuss whether the alleged error is even cognizable by way of a § 2255 motion. Since the *Scott* case has been around for approximately four years, the court finds the government's lack of knowledge in this area troubling.

For the purposes of this opinion, the court will presume that all of the sentencing issues raised by Paredes are cognizable by way of a § 2255 motion.

correct that § 2X1.1 was applicable, he could not have been prejudiced by the failure to apply the section. Indeed, Paredes was sentenced as a Career Offender under § 4B1.1. Under the Career Offender provision, Paredes' offense level was increased to 37. The Career Offender provision trumps the application of other provisions. Thus, even if Paredes' offense total would have been reduced under § 2X1.1, it nevertheless would have been increased to 37 under the Career Offender provision.

**2. The Career Offender provision [8]**

 In determining the offense level applicable to a Career Offender, § 4B1.1 directs the court to first determine the offense statutory maximum. The higher the statutory maximum, the higher the offense level, generally speaking. Here, Paredes' statutory maximum under 21 U.S.C. § 841(b)(1)(B) was determined to be life, producing an offense level of 37. Paredes argues—citing *United States v. Lambros,* 65 F.3d 698 (8th Cir.1995)—that the statutory maximum at the time of the commission of his crime was not life, but 25 years; accordingly, his offense level should not be 37 but 34.

The *Lambros* case concerns the application of 21 U.S.C. § 841(b)(1)(A)(ii). Paredes, however, was sentenced pursuant to § 841(b)(1)(B). That section, at the time of the offense, provided for a statutory maximum of life.

**3. Prior state conviction**

To be sentenced as a Career Offender, one must, among other things, have been convicted of at least two prior felony convictions of either a crime of violence or a controlled substance offense. *See* U.S.S.G. § 4B1.1. Paredes argues that one of the two prior felony convictions utilized to support the application of the Career Offender provision was unconstitutional, thus, it should not have been used for Career Offender purposes.

Paredes fails to support his position. He states the Illinois state court conviction for possession with intent to deliver a controlled substance had "obvious constitutional flaws."

Yet, he fails to state what those "flaws" were. His argument is conclusory. Accordingly, he has not established that his prior state court conviction was unconstitutional.

### III. *CONCLUSION*

Paredes' § 2255 motion is denied. The court is convinced that there was no denial or infringement of a constitutional right. His trial counsel did an exceptional job. Indeed, the court remembers this trial well. Paredes was a ticket scalper and a common drug dealer who disguised his drug transactions by utilizing coded language—language associated with scalping tickets. The jury was not fooled for an instant, however.

Case closed.

---

**8.** This argument was submitted in Paredes' motion to supplement his § 2255 motion.