**UNITED STATES of America, Respondent,**

v.

**John RYAN, Petitioner.**

**Nos. 97 C 2765, 93 CR 419–1.**

United States District Court, N.D. Illinois, Eastern Division.

Dec. 3, 1997.

Ordinance." Def.'s Supp.Br.Ex. A. The Bank further informs us that Crawford did not appeal the dismissal. *See id.* at 5 n. 1.

Ronald D. May, U.S. Atty's Office, Chicago, IL, for U.S.

John Ryan, Pekin, IL, pro se.

### MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge.

Upon entering a plea of guilty on September 20, 1993, petitioner John Ryan was convicted of six counts of conspiracy to possess with intent to distribute, and the distribution of ritalin, dilaudid, and morphine sulfate in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 846. We sentenced Ryan to 185 months in prison on counts I, IV, V, and VI, with the sentences to run concurrently with

each other, and to 60 months on counts II and III, to run concurrently with each other and with the sentences imposed on the other four counts. Ryan appealed, but the Seventh Circuit rejected his arguments and affirmed his sentence. *See United States v. Ryan,* 78 F.3d 587 (7th Cir.1996) (table) (unpublished opinion available at 1996 WL 89229). Ryan now moves this court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the motion is denied.

### I. Discussion

Most of Ryan's arguments in this petition allege that his attorney rendered ineffective assistance to him, depriving him of his Sixth Amendment right to counsel.[1] To establish that he was deprived of effective assistance of counsel, Ryan must demonstrate that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington,* 466 U.S. 668, 686–87, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984). With respect to the first prong—known as the "performance" prong—the Supreme Court has observed:

> The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel has made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred.

*United States v. Cronic,* 466 U.S. 648, 656, 104 S.Ct. 2039, 2044, 80 L.Ed.2d 657 (1984). The second prong—known as the "prejudice" prong—requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2067. A defendant asserting a Sixth Amendment

1. The government does not argue that Ryan procedurally defaulted his ineffective assistance arguments by failing to raise them on direct appeal, presumably because Ryan was represented by the same attorney at trial and on direct appeal. *See United States v. Taglia,* 922 F.2d 413, 418 (7th Cir.1991).

claim has "the heavy burden of affirmatively establishing that counsel's performance was constitutionally deficient." *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1133 (7th Cir.1990). We may not second-guess counsel's strategic decisions. *See United States v. Cooke*, 110 F.3d 1288, 1299 (7th Cir.1997). With these principles in mind, we consider each of Ryan's arguments in turn.

### A. Coerced Guilty Plea

Ryan's first argument is that his attorney rendered ineffective assistance by "coercing" him into entering a guilty plea. Pet'r Br. at 6. Despite this claim, Ryan does not identify any act by his attorney that could even arguably be characterized as coercive,[2] and the transcript of his plea hearing clearly establishes the voluntariness of his plea:

> THE COURT: [H]ave there been any conversations or promises or threats or coercion made to you by the United States Attorney, your attorney or any other person to induce you to enter a plea of guilty against your will?
>
> THE DEFENDANT: No.
>
> THE COURT: Do you understand that any such promises, threats or coercion made to you by anyone would in no way be binding upon the Court? Do you understand?
>
> THE DEFENDANT: Yes.
>
> THE COURT: In other words, you're making this plea of guilty voluntarily and as a result of your own decision, is that right?
>
> THE DEFENDANT: Yes, sir.

Plea Hr'g Tr. at 7–8. Ryan was also informed of the potential length of his sentence, and that this court would be the ultimate decisionmaker thereof.

> THE COURT: For each of the six counts you are pleading to there is a statutory penalty of up to 20 years imprisonment, a one-million dollar fine and up to five years supervised release . . . .
>
> The Probation Department will look at your personal background as well as the offenses here and will recommend a sentencing guideline range . . . . Your attorney and the government will have access to those computations and will have a right to object to any of those computations. And of course I [will] sentence you within the computed sentencing guideline range.
>
> Do you understand the possible penalties I could impose?
>
> THE DEFENDANT: Yes.

*Id.* at 10.

■ A defendant's declaration under oath that his guilty plea is voluntary is entitled to "a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977); *see also Nguyen v. United States*, 114 F.3d 699, 703–04 (8th Cir.1997); *Liss v. United States*, 915 F.2d 287, 292 (7th Cir.1990) (indicating that a petitioner challenging his own sworn testimony regarding the voluntariness of his plea "faces a heavy burden of persuasion"). Ryan has not come close to overcoming this presumption: even giving the most generous reading to his allegations, the most we could infer is that his attorney accidentally gave him inaccurate advice about the sentence the court was likely to impose. Thus, we cannot conclude that Ryan's attorney rendered ineffective assistance by "coercing" his client to plead guilty against his will.[3]

---

**2.** In fact, much of Ryan's discussion in this section of his brief seeks to establish that his attorney rendered erroneous advice regarding the impact of his status as a career offender on the length of his sentence, and that Ryan relied on this advice to his detriment, *see* Pet'r Br. at 7, but erroneous advice is not coercion. We will discuss this allegedly erroneous advice *infra* in Part I.B. 1, along with Ryan's other arguments related to his status as a career offender.

**3.** In *Daniels v. United States*, 54 F.3d 290, 293–94 (7th Cir.1995), the Seventh Circuit required a district court to hold an evidentiary hearing to determine if an attorney coerced his client to plead guilty. The court was careful to observe, however, that such hearings are not always necessary. *See id.* at 293. In *Daniels* the petitioner presented a colorable claim that his attorney had pressured him to plead guilty because of a conflict of interest. *See id.* at 294. The court found that an evidentiary hearing was necessary to determine if an actual conflict existed that could have provided a motive for the petitioner's attorney to coerce his client to plead guilty. *See id.* at 295. Our case is distinguishable, however, because Ryan has raised no comparable factual

Furthermore, even if Ryan's attorney's performance had been deficient Ryan has not established prejudice. In the context of his guilty plea, Ryan must demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v.. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); *see also United States v. Woolley,* 123 F.3d 627, 635 (7th Cir.1997); *Liss,* 915 F.2d at 291 (quoting *Key v. United States,* 806 F.2d 133, 138 (7th Cir.1986)). It is far from obvious how a petitioner is expected to make such a showing, but it is clear that "merely making such an allegation is insufficient." *Key,* 806 F.2d at 139 (rejecting the petitioner's bald allegation that he would have pleaded differently and gone to trial absent counsel's poor advice); *see also McCleese v. United States,* 75 F.3d 1174, 1179 (7th Cir.1996) (requiring that the petitioner "establish through objective evidence" that he would not have accepted the plea). We need not dwell on Ryan's proof problem because he does not even allege that he would have pleaded not guilty and proceeded to trial but for his attorney's flawed advice. Rather, he merely suggests that his expectation of being sentenced at an offense level of 26 (rather than 30) "was a major factor in his decision to plead as he did." Pet'r Br. at 7. Even if credited, this claim is not sufficient to establish prejudice. *See Gargano v. United States,* 852 F.2d 886, 891 (7th Cir.1988) ("We have already held that mere allegations by a defendant that he would have pleaded differently and insisted on going to trial are insufficient to establish prejudice; allegations that do not go even that far are clearly inadequate." (citation omitted)).[4]

### B. Career Offender Classification

Ryan next presents several ineffective assistance of counsel arguments related to his classification as a career offender under U .S.S.G. § 4B1.1. We address each in turn.

#### 1. Erroneous Advice

Ryan's most straightforward attack stems from his attorney's prediction that Ryan would be sentenced based on an offense level of 26; in fact, we sentenced him based on an offense level of 30. Ryan believes that his attorney misunderstood how the career offender provision (§ 4B1.1) would affect his offense level. *See* Pet'r Br. at 7. The fact that Ryan's counsel may have made an erroneous prediction, however, does not necessarily mean that his performance was constitutionally ineffective. As the Supreme Court has explained: "[A] decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good faith evaluations of a reasonably competent attorney will turn out to be mistaken ...." *McMann v. Richardson,* 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970). Taking its cue from *McMann,* the Seventh Circuit has held that counsel cannot be found to have rendered constitutionally ineffective assistance based on inaccurate sentence predictions made in good faith. *See United States v. Barnes,* 83 F.3d 934, 939–40 (7th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 156, 136 L.Ed.2d 101 (1996); *United States v. Arvanitis,* 902 F.2d 489, 494 (7th Cir.1990). Accordingly, even a grossly inaccurate prediction will not be found constitutionally inadequate unless the petitioner can show "that his attorney did not make a good-faith effort to discover the facts relevant to his sentencing, to analyze those facts in terms of the applicable legal principles and to discuss that analysis with him." *Barnes,* 83 F.3d at 940.

Ryan argues that his attorney failed to research the career offender provision adequately. *See* Pet'r Br. at 7. This assertion raises a question of fact that precludes us

---

question that would necessitate holding a hearing.

4. Ryan also suggests that he was prejudiced by his attorney's advice that he plead guilty to all six counts of the indictment rather than just one. He claims that this decision forced him to pay statutory assessment fees of $300 for six counts rather than $50 for one count. *See* Pet'r Br. at 8.

Even assuming that it was possible for Ryan to plead guilty to just one count of the indictment, an increase of $250 dollars in a prisoner's penalty is too minimal to constitute prejudice. *See Durrive v. United States,* 4 F.3d 548, 550–51 (7th Cir.1993) (emphasizing that a change in sentence must be "significant" before it can be deemed prejudicial to the defendant).

from determining whether Ryan's counsel's performance was constitutionally ineffective in the absence of an evidentiary hearing. *Cf. Daniels,* 54 F.3d at 293 (district court must hold an evidentiary hearing if the petitioner alleges facts that could entitle him to relief).[5] We need not hold an evidentiary hearing, however, because even if the hearing revealed that Ryan's attorney did make an erroneous sentencing prediction without conducting a good faith investigation, Ryan has not shown prejudice. As discussed above, to establish prejudice in the context of his guilty plea Ryan must show a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial if his attorney's advice had been accurate. *See Hill,* 474 U.S. at 59, 106 S.Ct. at 370. Ryan does not even allege this, let alone establish it "through objective evidence" as the Seventh Circuit requires. *McCleese,* 75 F.3d at 1179.

### 2. Failure to Object

Ryan next complains that at his sentencing hearing his attorney did not object to the government's verbal response to a motion he had previously filed seeking to establish that Ryan was not a career offender. Ryan believes an objection should have been made because the Assistant U.S. Attorney had promised not to respond to this motion. *See* Pet'r Br. at 9. The AUSA's breach allegedly prejudiced Ryan because his attorney was unprepared to rebut the government's response.

This argument borders on frivolousness. Even entertaining the unlikely possibility that the AUSA promised to "stand mute" at the sentencing hearing, his breach of this promise could not have left Ryan's attorney unprepared since the AUSA only discussed the cases cited in Ryan's own motion. *See* Sentencing Tr. at 6–7. More fundamentally, Ryan cannot establish that he was prejudiced by this episode unless he shows that our

ultimate decision to classify him as a career offender was wrong. As explained in the sections below, Ryan cannot make such a showing.

### 3. Failure to Investigate

The third argument Ryan presents related to his status as a career offender is that his attorney rendered ineffective assistance by failing to investigate the conduct of Sheldon Grauer, who represented Ryan when he was convicted of armed robbery in 1980. Ryan contends that the 1980 conviction is void because Grauer rendered ineffective assistance at the trial and that a reasonable investigation would have revealed this. *See* Pet'r Br. at 11. Ryan believes his attorney's failure to investigate prejudiced him because if the 1980 conviction had been found to be void he would not have qualified for the career offender enhancement.

 Even if Ryan's attorney had thoroughly investigated the 1980 conviction and found proof of ineffective assistance, this would have done Ryan no good because of the well-settled rule that collateral attacks on prior convictions will only be permitted if the defendant claims that he was deprived of counsel at the earlier trial. *See Ryan,* 1996 WL 89229 at *1 (citing *Custis v. United States,* 511 U.S. 485, 492–93, 114 S.Ct. 1732, 1737–38, 128 L.Ed.2d 517 (1994), and *United States v. Arango–Montoya,* 61 F.3d 1331, 1336 (7th Cir.1995)). Since Ryan clearly was not deprived of counsel in 1980, *see id.,* any attempt to collaterally attack the 1980 sentence would be fruitless. This principle was clearly illustrated when Ryan's attorney tried unsuccessfully to convince us to disregard the 1980 conviction by arguing that Ryan was denied a fair and impartial jury in that case due to inflammatory remarks by the trial judge. The Seventh Circuit affirmed our holding that *Custis* and its progeny precluded collateral attacks of this kind. *See id.* Accordingly, counsel's refusal to investigate

---

5. There is some circumstantial evidence in the record that seems to indicate that Ryan's attorney had done some research on the applicability of the career offender provision prior to Ryan's decision to enter a guilty. At the end of plea hearing, Ryan's counsel advised us that he "anticipate[d] some litigation regarding the presentence report" and that he was trying to obtain

transcripts from one of Ryan's state-court convictions. *See* Plea Hr'g Tr. at 11–12. The clear implication of these comments is that counsel had already determined that Ryan's career offender status might be open to challenge, but this small clue is not sufficient to enable us to determine if counsel's research prior to the hearing constituted a good-faith effort.

the 1980 conviction as thoroughly as Ryan desired was not deficient performance.

### 4. Erroneous Sentence

■ In his final attempt to challenge his classification as a career offender, Ryan forsakes the ineffective assistance approach and simply argues that his 1980 conviction was void for five different reasons and should not have been used to enhance his sentence.[6] Even aside the fact that this argument has been procedurally defaulted due to Ryan's failure to raise it at trial or on direct appeal, it is barred by the *Custis* rule discussed above. Furthermore, this claim is precluded by the rule that simple claims of sentencing error cannot be raised in a § 2255 petition. *See Scott v. United States,* 997 F.2d 340, 342–43 (7th Cir.1993); *see also Martin v. United States,* 109 F.3d 1177, 1178 (7th Cir.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 335, 139 L.Ed.2d 260 (1997).

### C. Failure to Consult

Ryan's next claim is that his attorney rendered ineffective assistance by "refusing to communicate" with him regarding the issues to be raised on appeal. Pet'r Br. at 13. This is plainly a mischaracterization of events, since Ryan's own brief indicates that his attorney spoke with him on July 20, 1995, regarding the substance of his appeal. *See id.* at 13–14. What Ryan really seems to be complaining about is his attorney's failure to raise on appeal two issues that Ryan believes should have been raised: (1) whether he should have received a three offense level reduction for acceptance of responsibility (rather than a two level reduction), and (2) whether the government should have been barred from responding to Ryan's argument that he was not a career offender. *See id.* at 14.[7]

■ An appellate attorney's performance will not be considered constitutionally ineffective merely because he declines to raise every colorable claim that the petitioner wishes to present. *See Evitts v. Lucey,* 469 U.S. 387, 394, 105 S.Ct. 830, 834, 83 L.Ed.2d 821 (1985) (citing *Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983)); *Mason v. Hanks,* 97 F.3d 887, 892 (7th Cir.1996). Although counsel is required to communicate with the defendant regarding the appeal, the choice of which issues to raise on appeal is not one of the "fundamental decisions" that must ultimately be made by the defendant, *see Jones,* 463 U.S. at 751, 103 S.Ct. at 3312; rather, this is a decision that we entrust to the judgment of counsel. *See United States v. Wagner,* 103 F.3d 551, 552 (7th Cir.1996) (suggesting that "counsel's decision on which issues to raise on appeal would normally be conclusive"). As long as counsel does not make professionally unreasonable choices, such as neglecting to raise arguments that are "dead-bang winners," *Page v. United States,* 884 F.2d 300, 302 (7th Cir.1989), his choices will not be deemed constitutionally ineffective. *See Mason,* 97 F.3d at 893 (counsel must overlook a "significant and obvious" issue to be found to have rendered a deficient performance). As discussed elsewhere in this opinion,[8] neither the acceptance of responsibility issue nor the career offender issue has significant merit, so Ryan's counsel did not perform ineffectively by failing to raise these issues on appeal. Or, to put it another way, Ryan suffered no

---

6. This argument has a rather tortured procedural history. Ryan initially presented it in a separate petition under § 2254, which was randomly assigned to Judge Bucklo (case number 97 C 2764). Judge Bucklo denied Ryan's petition without prejudice, suggesting that the proper vehicle for challenging the 1980 conviction was in a § 2255 petition (Order dated June 24, 1997). Although Ryan apparently disagrees with this ruling, he filed a motion to amend his § 2255 petition to include his challenges to the 1980 conviction, a motion we hereby grant.

7. Ryan also complains about counsel's refusal to appeal "motions that weren't addressed at the

district level," Pet'r Br. at 14, which we assume is a reference to Ryan's Amended Request for Determination (filed May 3, 1994). The Request basically asserted that 21 U.S.C. § 841(b) was too vague to permit the defendant to determine if the government was applying it properly. In fact, Ryan's attorney raised this issue on appeal, and the Seventh Circuit determined that this court had properly applied § 841(b). *See Ryan,* 1996 WL 89229 at *1–2.

8. The acceptance of responsibility argument is addressed *infra* in Part I.E, and the career offender issue is discussed *supra* in Part I.B.2.

prejudice from his counsel's failure to raise these meritless issues on appeal. *See id.* (indicating that the strength of the arguments not raised by counsel relates to both performance and prejudice).

### D. Vagueness of § 841

Ryan contends that his attorney was ineffective in failing to "get a ruling from the judge" on his Amended Request for Determination (filed May 3, 1994), which basically asserted that 21 U.S.C. § 841(b) was too vague to permit the defendant to determine if the government was applying it properly. This argument is frivolous. Ryan's attorney obviously did not have the power to force this court to respond to his Request. The most he could do is file an appropriate motion and hope for a favorable ruling. When we implicitly denied Ryan's Request by handing down a sentence based on the interpretation of § 841(b) proposed by the government, the only available remedy was to argue on appeal that we had erred. Ryan's attorney did so, but the Court of Appeals ruled that we had applied § 841(b) properly. *See Ryan,* 1996 WL 89229 at *1–2. Ryan's attorney's handling of this issue was not even close to ineffective, and even if it were, the Seventh Circuit's affirmance of our application of § 841(b) means that Ryan could not have been prejudiced.

### E. Acceptance of Responsibility

■ Ryan's final two arguments concern the application of the Acceptance of Responsibility provision of the United States Sentencing Guidelines, U.S.S.G. § 3E1.1. The offense level at which Ryan was sentenced was reduced by two levels under § 3E1.1(a), but Ryan believes it should have been reduced by an additional level pursuant to § 3E1.1(b). *See* Pet'r Br. at 18. Ryan first presents the simple claim that "this Honorable Court did not consider the appropriate factors at sentencing in accordance with U.S.S.G. § 3E1.1." As we have already discussed, simple claims of sentencing error cannot be raised in a § 2255 petition, *see Scott,* 997 F.2d at 342–43; *see also Martin,* 109 F.3d at 1178, so this argument fails.

■ Ryan's alternative tactic is to try to circumvent *Scott* by claiming that his attor-

ney rendered ineffective assistance by failing to appeal our denial of the third level reduction under § 3E1.1(b). This argument is unavailing, however, because ineffective attorney performance that only affects a defendant's sentence by one or two offense levels is not significant enough to satisfy the prejudice prong of the *Strickland* test. *See Durrive v. U.S.,* 4 F.3d 548, 550–51 (7th Cir. 1993).

## II. Conclusion

For the foregoing reasons, Ryan's motion to vacate, set aside, or correct his sentence is denied. It is so ordered.