In the
United States Court of Appeals
For the Seventh Circuit

No. 98-1736

John Ryan,

Petitioner-Appellant,

v.

United States of America,

Respondent-Appellee.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 2765--Marvin E. Aspen, Chief Judge.


Argued January 18, 2000--Decided June 5, 2000


  Before Easterbrook, Kanne, and Diane P. Wood, Circuit
Judges.

  Easterbrook, Circuit Judge.  Custis v. United
States, 511 U.S. 485, 487 (1994), considered
"whether a defendant in a federal sentencing
proceeding may collaterally attack the validity
of previous state convictions that are used to
enhance his sentence" and held that "a defendant
has no such right (with the sole exception of
convictions obtained in violation of the right to
counsel)". We must decide whether Custis means
only that the time for the attack on the state
conviction is postponed to a collateral attack on
the federal sentence. Our answer is no. A
sentence imposed following the approach of Custis
is lawful and thus not subject to collateral
attack under 28 U.S.C. sec.2255 as long as the
prior convictions remain undisturbed. Accord,
Moore v. Roberts, 83 F.3d 699, 702-03 (5th Cir.
1996); Turner v. United States, 183 F.3d 474, 477
(6th Cir. 1999); Charlton v. Morris, 53 F.3d 929
(8th Cir. 1995); Clawson v. United States, 52
F.3d 806 (9th Cir. 1995), reiterated by United
States v. Daniels, 195 F.3d 501 (9th Cir. 1999).
Contra, Young v. Vaughn, 83 F.3d 72 (3d Cir.
1996); United States v. Clark, 203 F.3d 358 (5th
Cir. 2000) (agreeing with Young and disapproving
Charlton, but without mentioning the circuit's
earlier decision in Moore).

  John Ryan was sentenced to 185 months'

imprisonment as a career offender under U.S.S.G. sec.4B1.1 following his guilty plea to multiple drug crimes. Career-offender enhancement is mandatory for an adult who commits a drug felony and has at least two prior felony convictions for drug offenses or crimes of violence. Ryan concedes that his criminal record contains two convictions meeting that description but insists that one of them--a 1980 conviction in Illinois for armed robbery--is invalid. Ryan did not appeal that conviction or subject it to collateral attack while he was in custody under it. At the sentencing for his federal drug offenses, however, he asked the district judge to inquire into its validity. Ryan contended that his 1980 plea had been involuntary because the panel from which his jury would have been selected heard the judge sentence another defendant and make comments deploring the high incidence of crime. Ryan's lawyer asked the judge to secure a new pool of jurors; when the judge refused, Ryan pleaded guilty. The judge in the federal case remarked that Ryan could have gone to trial and appealed (if he had been convicted) to present his claim of error; the federal judge did not see any possibility that simply by denying Ryan's motion the state judge rendered his plea involuntary. Ryan repeated his argument on appeal to this court but received a different kind of response: that Custis precludes an indirect collateral attack on the state sentence, and that the 1980 conviction therefore counts for career-offender purposes whether Ryan's plea was voluntary or not. 1996 U.S. App. Lexis 3836 (7th Cir. Feb. 29, 1996). Under Custis, we held, only the lack of counsel permits such an indirect collateral attack.

A few days before the statutes of limitations in 28 U.S.C. sec.sec. 2244(d) and 2255 para.6 expired, Ryan launched two collateral attacks-- one on the 1980 state conviction, the other on the 1995 federal sentence. The challenge to the state conviction was assigned to District Judge Bucklo, who dismissed it with the observation that Ryan was no longer "in custody" under the 1980 conviction and therefore could not use sec.2254 to contest its validity. See Maleng v. Cook, 490 U.S. 488, 492-93 (1989). Both Judge Bucklo and this court denied Ryan's application for a certificate of appealability to review that decision. The challenge to the federal sentence was assigned to Chief Judge Aspen, who rejected it on the ground that Custis is as applicable to a petition under sec.2255 as it is to sentencing and direct appeal. 986 F. Supp. 509 (N.D. Ill. 1997). Ryan offered a new theory of involuntariness: that his lawyer compelled him to plead guilty by refusing to go forward with the trial unless paid $2,000. If Ryan did not tell

this to the state judge when entering his plea, it is difficult to see how the subject can be raised 20 years later. See United States v. Stewart, 198 F.3d 984 (7th Cir. 1999). But the record does not contain a transcript of the plea, so Judge Aspen assumed, as shall we, that Ryan not only could establish that his lawyer made this demand but also did not know that an indigent defendant is entitled to court-appointed counsel. Still, Judge Aspen observed, Ryan had the assistance of counsel at the time of his plea, and no more is required by Custis.

On this, Ryan's second appeal, the United States leads off with the argument that our 1996 decision is the law of the case, which Ryan cannot avoid just by changing his theory about why the plea was involuntary. Even if an indirect collateral challenge to a conviction used to enhance a federal sentence is, like a claim of ineffective assistance, the sort of contention that ordinarily may be deferred until a motion under sec.2255, the fact remains that Ryan did object at sentencing, and on direct appeal, to the consideration of the 1980 state conviction. A defendant who complains on direct appeal about the quality of his lawyer can't try again on collateral attack unless there has been an intervening change of law, United States v. Taglia, 922 F.2d 413, 417-18 (7th Cir. 1991), and Ryan does not make such an argument. What he does say, however, is that our 1996 decision should be disregarded for the same reason Ryan thinks that Custis is irrelevant: that all Custis does (and, by implication, all we did in 1996) is postpone decision to a collateral attack under sec.2255. It is not possible to disentangle the argument based on law of the case from the arguments about the effect of Custis, so we turn directly to that subject.

Custis gave several reasons why a prior conviction is conclusive for purposes of recidivist sentencing. First, the Armed Career Criminal Act, 18 U.S.C. sec.924(e), the statute involved in Custis, "focuses on the fact of the conviction and nothing [in sec.924] suggests that the prior final conviction may be subject to collateral attack for potential constitutional errors before it may be counted." 511 U.S. at 491 (emphasis in original). Lewis v. United States, 445 U.S. 55 (1980), holds that a person with a felony conviction who possesses a firearm cannot defend by insisting that he shouldn't have been convicted; that he was convicted is sufficient, the Court concluded. Custis holds that sec.924(e) should be treated like the felon-in-possession statute. 511 U.S. at 491-93. Although the Court recognized that prior decisions had permitted an indirect collateral challenge when a prior

conviction was uncounseled, it declined to extend these cases. Id. at 493-96. At the conclusion of this discussion the Court remarked:

Ease of administration also supports the distinction. As revealed in a number of the cases cited in this opinion, failure to appoint counsel at all will generally appear from the judgment roll itself, or from an accompanying minute order. But determination of claims of ineffective assistance of counsel, and failure to assure that a guilty plea was voluntary, would require sentencing courts to rummage through frequently nonexistent or difficult to obtain state-court transcripts or records that may date from another era, and may come from any one of the 50 States.

511 U.S. at 496. Finally, the Court observed that "principles of finality associated with habeas corpus actions apply with at least equal force when a defendant seeks to attack a previous conviction used for sentencing. By challenging the previous conviction, the defendant is asking a district court 'to deprive [the] [state-court judgment] of [its] normal force and effect in a proceeding that ha[s] an independent purpose other than to overturn the prior judgment.' [Parke v. Raley, 506 U.S. 20 (1992)] at 30. These principles bear extra weight in cases in which the prior convictions, such as one challenged by Custis, are based on guilty pleas, because when a guilty plea is at issue, 'the concern with finality served by the limitation on collateral attack has special force.' United States v. Timmreck, 441 U.S. 780, 784 (1979) (footnote omitted)." 511 U.S. at 497 (full citation to Parke added; other brackets and parentheses in the original).

   What the Court said about sec.924(e) is equally applicable to the career-offender guideline. United States v. Killion, 30 F.3d 844, 846 (7th Cir. 1994); United States v. Arango-Montoya, 61 F.3d 1331, 1336 (7th Cir. 1995). The Sentencing Commission instructed courts to use the fact of prior convictions as conclusive when calculating criminal history. U.S.S.G. sec.4A1.2 Application Note 6. The Commission recognized, as did the Court in Custis, that some recidivist statutes expressly permit contest to the validity of prior convictions. E.g., 21 U.S.C. sec.851(c)(1). But in the absence of such an independent right of review, the Commission stated, all outstanding convictions must be counted.

   Ryan wants us to disregard not only the language in Custis (and the Guidelines)

emphasizing that the fact of prior conviction is dispositive but also the Court's reminder that collateral attacks on prior convictions are incompatible with principles of finality-- especially, Custis said, when the defendant pleaded guilty, as Ryan did. Instead Ryan plays up the Court's observation about ease of administration (the language in the block quote above). Now that sentencing has been completed, Ryan contends, it is as easy to go back and determine the validity of the 1980 conviction as it is to resolve any other collateral attack. That may be true, but it does not justify disregarding the other strands of the Court's reasoning. Custis concluded that it is proper to count the prior conviction. Ryan could have challenged his 1980 conviction by appeal or by collateral attack when he was still in custody. He did not do so, the time to do it is long gone, and "principles of finality associated with habeas corpus actions apply with at least equal force when a defendant seeks to attack a previous conviction used for sentencing." Custis, 511 U.S. at 497.

The linchpin of Ryan's argument is a belief that only a valid conviction can justify an increase in one's sentence. Not so. Ryan argues as if he were in custody once again for the armed robbery, but he isn't. Recidivist sentencing is not a second or deferred punishment for the prior offense. It is a way to determine the appropriate punishment for the latest crime. Witte v. United States, 515 U.S. 389 (1995). And there is no doubt that Ryan's 1995 convictions for drug offenses are valid and supply adequate grounds for his current incarceration. (The maximum punishment Ryan faced in 1995 was 40 years' imprisonment. 21 U.S.C. sec.841(b)(1)(B)(vii).) When imposing sentence judges may consider acts that did not lead to a conviction. E.g., McMillan v. Pennsylvania, 477 U.S. 79 (1986). The Sentencing Guidelines contain elaborate rules about "relevant conduct" that counts against the defendant whether or not it has been the subject of a conviction. Edwards v. United States, 523 U.S. 511 (1998). Indeed, a judge may take account of prior criminal conduct even though a jury has acquitted the defendant of charges based on the events. United States v. Watts, 519 U.S. 148 (1997). And the Court added in Nichols v. United States, 511 U.S. 738 (1994), that even an uncounseled conviction may be the basis for recidivist sentencing under the Guidelines, when the sixth amendment did not require counsel (because the original crime was a misdemeanor that did not lead to incarceration).

Many events that have been determined only by a preponderance of the evidence, and without the

safeguards of a criminal trial, lead to higher sentences. Cases such as Edwards, Watts, Witte, and Nichols just instantiate this more general proposition. Consider a few more examples. (1) Stationhouse confessions are good grounds on which to enhance a sentence, even though confessions standing alone do not support convictions. (2) A person deported after informal proceedings faces a higher sentence for entering the United States improperly than does a person who has never been deported. (3) A person who cuts someone else's hair without a license may be punished as a criminal, even though it is possible to deny a license application without proof beyond a reasonable doubt. Once we see that acts proved beyond a reasonable doubt after a full-dress criminal trial are not the only acceptable grounds for enhancement, it looks very odd to invest substantial resources determining whether a particular conviction offered in sentencing indeed meets the standards developed for full-dress litigation. Why should a judgment of conviction based on a guilty plea (that is, on a confession in open court) be less legitimate, as a ground for enhancement, than a stationhouse confession? No one would suppose that a lawyer's demand for a fee puts a stationhouse confession off limits for sentencing purposes; should the confession in open court to armed robbery be the less usable when ascertaining the appropriate sentence for Ryan's drug crimes? Both a stationhouse confession to armed robbery and the 1980 guilty plea show that Ryan is incorrigible-- 15 years after committing an armed robbery, and despite serving time for that offense, Ryan is still an active criminal. That knowledge justifies a more severe sentence to achieve both deterrence and incapacitation.

Custis left open the question whether a person who has his conviction set aside by the rendering court--say, by a writ of error coram nobis--is entitled to reconsideration of a federal recidivist sentence. 511 U.S. at 497. Several courts have held or assumed that the answer is yes. E.g., United States v. Pettiford, 101 F.3d 199 (1st Cir. 1996); United States v. Bacon, 94 F.3d 158, 162 n.3 (4th Cir. 1996); Turner v. United States, 183 F.3d 474 (6th Cir. 1999). We need not address that question, however, because Ryan has not persuaded Illinois to annul his conviction for armed robbery. He had ample chance but did not pursue his avenues. Today is too late. Even had Judge Bucklo concluded that Ryan's federal custody authorizes a collateral challenge to the state conviction under sec.2254 this would not have done Ryan any good. A person seeking federal relief against a state conviction must fairly present his contentions to state court. O'Sullivan v. Boerckel, 526 U.S. 838 (1999). Ryan

never did, and Illinois would deem untimely any effort to do so at this remove. 725 ILCS 5/122-1(c). Like Custis itself, our decision in Tredway v. Farley, 35 F.3d 288 (7th Cir. 1994), which treated the state's timeliness rules as defects in state remedial processes that entitle a federal court to disregard a person's failure to present the claims to the state, was rendered when federal law did not impose time limits on collateral attacks. That changed in 1996, with the Antiterrorism and Effective Death Penalty Act. Now federal law includes a one-year period of limitations, for collateral attacks against both state and federal convictions. It is no longer possible to conclude, as Tredway did in 1994, that time limits under state law excuse convicted persons from the duty to present their claims to state court. See Edwards v. Carpenter, 120 S. Ct. 1587 (2000) (failure to present a claim to a state court within the state's timeliness rules is a default that precludes collateral review in federal court unless both cause and prejudice are established). By disdaining the Illinois courts when he had the chance, Ryan lost any entitlement to obtain a federal declaration that his 1980 conviction is invalid, for he does not argue that any "cause" (which is to say, an impediment created by the state) excuses the delay. See also, e.g., Freeman v. Page, 208 F.3d 572 (7th Cir. 2000).

Defendants have ample reason to challenge their convictions on direct appeal, or collaterally while serving their sentences. The Sentencing Commission's approach, like that of the Armed Career Criminal Act, relies on this incentive. Serious challenges are likely to be brought, and resolved, before the sentencing for a later offense. Convicts who wait too long can try coram nobis, which is available in many states. This is what happened in United States v. Tucker, 404 U.S. 443 (1972): the defendant obtained writs of error coram nobis, which justified resentencing on the current conviction. See also Johnson v. Mississippi, 486 U.S. 578 (1988). Any convicted person has ample opportunities to obtain review. Requiring defendants to use these opportunities, rather than tarry and then launch indirect collateral attacks during or after sentencing for some other offense, has significant benefits. It sends persons to the rendering courts, which have the records necessary to determine whether a conviction is valid or not. It requires them to act promptly, while the information necessary to determine validity is available (and while reprosecution is possible, at least in theory, if the conviction is flawed).

Honoring judgments that remain outstanding after full opportunity for direct and collateral review

does not dis-honor the constitutional claims the defendant wishes to make. It simply establishes rules for presenting these claims to the right court, and in a timely fashion. Respecting judgments is the norm in our legal culture: the full faith and credit clause and common law principles of res judicata combine to make respect for judgments the rule. During this century courts began to readjudicate issues that were, or could have been, presented to the rendering court. E.g., Frank v. Mangum, 237 U.S. 309 (1915); Waley v. Johnston, 316 U.S. 101 (1942); Brown v. Allen, 344 U.S. 443 (1953). This development depends on a federal statute, not on constitutional right. See Lindh v. Murphy, 96 F.3d 856, 871-74 (7th Cir. 1996) (en banc), reversed on other grounds, 521 U.S. 320 (1997). See also Williams v. Taylor, 120 S. Ct. 1495 (2000). No statute expressly authorizes the form of derivative collateral attack that Ryan wants to wage, and the changes made by the AEDPA show that long-deferred challenges that were never presented to the state courts are no longer appropriate grounds of federal relief. Whether some avenue remains open to Ryan in Illinois is a question we pretermit, along with the question (the one reserved at the end of Custis) whether a writ of error coram nobis would justify relief under sec.2255. Because Ryan's 1980 conviction remains on the books to this day, it is not possible to conclude, in the language of sec.2255 para.1, that his federal sentence "was in excess of the maximum authorized by law, or is otherwise subject to collateral attack". The sentence is within the statutory limit, was altogether proper under Custis, and therefore may not now be upset. Affirmed

DIANE P. WOOD, Circuit Judge, dissenting. Once again, we are called upon to unravel the complexities of collateral attacks on federal sentences. That task, which is hard enough when the question is what kinds of defects in the original proceeding are serious enough to entitle a prisoner to have a conviction or sentence set aside, becomes even more difficult when the attack indirectly calls into question the results of earlier proceedings. Our case is such a case. We must decide here whether there is any way at all that a federal prisoner can challenge a federal sentence that was based in part on a void, unconstitutional prior state conviction. The majority concludes that there is nothing such a prisoner can do, even in a state like Illinois that affords absolutely no way for an individual who has finished serving the unconstitutional prior sentence to erase it from the books. I disagree, and I therefore respectfully dissent.

John Ryan pleaded guilty in 1980 to state charges of armed robbery before the Circuit Court of Cook County, Illinois. He was sentenced to six years' imprisonment for that offense. He took no appeal, nor did he file a state post-conviction petition; instead, he served out the sentence to its completion. Only later did it turn out that his guilty plea may have been procured through the most serious form of attorney misconduct. Ryan claims that on the day of trial, his lawyer demanded a payment of $2,000 as the price of going forward. Ryan didn't have the money, and so he pleaded guilty instead. The lawyer in question was later disbarred by the Illinois Supreme Court. In 1987, the court accepted a voluntary disbarment based on six pending proceedings in which he was charged with unethical conduct toward clients other than Ryan. The charges included lying to a client by telling him that the appellate court had affirmed his conviction, when the lawyer had never appealed the case at all; lying to another pair of clients by telling them he had incorporated their business when he had not done so, and the lie eventually forced them into bankruptcy; and using client escrow accounts to hide personal funds from the Internal Revenue Service. Ryan claims that the lawyer's effort to shake him down on the morning of the trial was one more item on this inglorious list. If Ryan's allegation proves to be true, then it would be compelling evidence that he had received constitutionally ineffective counsel in conjunction with his 1980 conviction.

Years later, Ryan was foolish enough to commit another offense, this time the federal controlled substance crime to which he pleaded guilty on September 20, 1993, in United States v. Ryan, No. 93-CR-419-1, N.D. Illinois. For that crime, Ryan received a sentence of 185 months plus five years' supervised release. He started with an offense level of 26 and a criminal history category of VI. Six levels were then added pursuant to the career offender provision, U.S.S.G. sec. 4B1.1, based on the 1980 Illinois conviction just described and one other conviction that he does not challenge. Last, two levels were deducted for acceptance of responsibility, see sec. 3E1.1(b), giving a final offense level of 30 and a range of 168 to 210 months. Had it not been for the 1980 Illinois conviction, the career offender enhancement would not have been proper; and without those extra 6 levels, the final offense level would have been 24 and the range 100 to 125 months. It is therefore obvious that Ryan and anyone similarly situated has a substantial stake in being able to correct the kind of problem he had in the 1980 conviction, in some court, at some time.

The majority holds that Ryan is out of luck, unless the state offers a way to vacate an unconstitutional prior conviction for which the entire sentence has been served. It believes that its result is compelled by Custis v. United States, 511 U.S. 485 (1994). But the Court had no such problem before it in Custis. We must decide now whether the principles underlying Custis apply to this significantly different fact pattern.

The first question is whether Ryan should be proceeding under 28 U.S.C. sec. 2254, the statute normally used to attack state convictions and sentences, or 28 U.S.C. sec. 2255, the counterpart statute for federal convictions and sentences. I agree with the district court that the correct vehicle was sec. 2255. This follows from Maleng v. Cook, 490 U.S. 488 (1989), in which the Court held that when a state prisoner seeks to challenge a prior state conviction via sec. 2254, the custody that matters is the current one, not any custody that resulted from the prior conviction: "[T]he habeas petitioner [is] 'in custody' under the conviction or sentence under attack at the time his petition is filed." Id. at 490-91 (emphasis added), citing Carafas v. LaVallee, 391 U.S. 234, 238 (1968). See also Crank v. Duckworth, 905 F.2d 1090, 1091 (7th Cir. 1990) ("Maleng holds that when sentence A has expired but has been used to augment sentence B, the prisoner is 'in custody' only on sentence B."). Although neither the Supreme Court nor this court has explicitly ruled on this point before, Maleng makes clear that the district court did not have jurisdiction to consider the validity of Ryan's expired Illinois sentence under sec. 2254. Ryan has not been "in custody" of the State of Illinois under that sentence for many years. Neither is he under "present restraint" pursuant to that conviction. Maleng, 490 U.S. at 492. Therefore, he does not meet the statutory requirements to seek review of that sentence under sec. 2254. This is the first important contrast with the situation facing the Court in Custis, where the Court found that the petitioner could attack the prior state conviction through sec. 2254 because he was still in state custody at the time of his federal sentencing. The Custis Court had no occasion to consider what might happen if neither sec. 2254 nor any other remedy was still available.

Following Maleng, we have held that when a sentence has been enhanced based on an allegedly unlawful or factually erroneous conviction, a prisoner may bring a habeas corpus petition in the court with jurisdiction to grant release from the enhanced sentence, or reduction of that sentence. Lowery v. Young, 887 F.2d 1309, 1312-13

(7th Cir. 1989). Lowery involved a different permutation of today's problem, where a state prisoner in custody under one state sentence claimed that the sentence had been unconstitutionally enhanced by prior, unlawful convictions of another state. We concluded that the district court had jurisdiction to consider his claims, even though the prisoner was in custody only of the state which had imposed the enhanced sentence. Indeed, the only court with jurisdiction to grant his requested relief--an earlier release from his current custodian--was the court with jurisdiction over that custodian. 887 F.2d at 1312-13. See also Crank, 905 F.2d at 1091.

The same logic applies here. Ryan is a federal prisoner "in custody" under a federal sentence. His complaint pertains to the length of that sentence, which means that the statute he can and must use is sec. 2255. Maleng rules out sec. 2254, and the fact that the attack relates to the sentence rules out 28 U.S.C. sec. 2241. This conclusion follows from a number of our prior decisions. See, e.g., Tredway v. Farley, 35 F.3d 288, 292 (7th Cir. 1994) ("Because a person currently serving a sentence that was enhanced on the basis of a prior conviction is still in custody, he may challenge the enhancing conviction as constitutionally invalid even though the prior conviction's original custodial term has expired."), quoting Smith v. Farley, 25 F.3d 1363, 1365-66 (7th Cir. 1994); Crank, 905 F.2d at 1091 ("Whether the federal court with jurisdiction over the custodian holding the prisoner on [the enhanced] sentence B may inquire into the validity of [the prior] sentence A is a matter of comity and the rules of preclusion, not of 'custody'."). See also United States v. Tucker, 404 U.S. 443 (1972) (granting relief under sec. 2255 to petitioner whose federal sentence was enhanced based on prior, unconstitutional state conviction); United States v. Clark, 203 F.3d 358, 364 (5th Cir. 2000) (collecting cases).

Custis itself implies that the "in custody" requirement of sec. 2255 is met where a federal sentence has been enhanced by a prior state conviction. In stating that "[i]f Custis is successful in attacking these state sentences, he may then apply for reopening of any federal sentence enhanced by the state sentence," 511 U.S. at 497, the Court acknowledged that the proper vehicle to attack the enhanced sentence is sec. 2255. Several circuits have likewise held that a federal prisoner may bring a sec. 2255 motion after successfully attacking a prior state conviction. See Turner v. United States, 183 F.3d 474, 477 (6th Cir. 1999); United States v. Bacon,

94 F.3d 158, 161-62 & n.3 (4th Cir. 1996); United States v. Cox, 83 F.3d 336, 339 (10th Cir. 1996); United States v. Nichols, 30 F.3d 35, 38 (5th Cir. 1994). The only wrinkle presented by this case is whether the federal prisoner is entitled to seek correction of his federal sentence if he has not, for whatever reason, already launched a successful collateral attack on his state conviction.

The majority's principal reason for concluding that no such entitlement exists is the fact that Ryan's 1980 conviction was literally on the books at the time of his federal sentencing. It argues that because there was a conviction, the decision to enhance his federal sentence under sec. 4B1.1 was automatically "correct" and the sentence is therefore immune from challenge under sec. 2255. Custis, however, did not take such a strict approach. Nothing in Custis implied that the earlier state conviction used to enhance Custis's sentence was legally correct. Nor did the Court suggest that the possibility that Custis's prior conviction was tainted with constitutional error was irrelevant. Instead, the Court focused on the language of the Armed Career Criminal Act ("ACCA") to resolve the narrow question whether that statute provided persons sentenced under it an opportunity to attack the validity of their prior convictions during sentencing under that statute. The Court explained: "The [ACCA] focuses on the fact of the conviction and nothing suggests that the prior final conviction may be subject to collateral attack for potential constitutional errors before it may be counted [for sentencing]." 511 U.S. at 490-91. The Court came to a similar conclusion in Lewis v. United States, 445 U.S. 55 (1980). Construing a predecessor to the current felon-in-possession-of-a-firearm statute, 18 U.S.C.A. sec. 1202(a)(1) (Supp. 1982), the Court held that the statute was not limited to felons whose convictions were subject to possible collateral attack but rather applied to all persons with a felony conviction on the books. 445 U.S. at 60-65.

What the Court focused on in both of these cases was whether the applicable recidivist statute provided an opportunity for persons subject to the statute to expunge their past in the same sentencing proceeding in which the trial court was to determine whether the individual was subject to additional sanctions and penalties based on those past convictions. Some statutes allow people with a criminal history to attack the validity of their prior convictions before being subjected to higher penalties, see 18 U.S.C. sec. 3575(e) (dangerous special offender), 21 U.S.C. sec. 851(c)(2) (recidivism under the Comprehensive Drug Abuse Prevention and Control

Act of 1970), while others do not, see 18 U.S.C. sec. 924(e) (sentencing for felons in possession of a firearm).

My colleagues construe the criminal history provisions of the Sentencing Guidelines, U.S.S.G. sec. 4A1.2, in the same manner as the Supreme Court construed the ACCA in Custis, to mean that convictions that have not yet been expunged or vacated may be used to enhance a sentence without providing the person being sentenced with an opportunity to attack the validity of those convictions during the original sentencing proceedings. Given the language of the criminal history Guideline, this much of its interpretation makes sense. Naturally, this language also implies (consistently with Custis) that a conviction that has previously been expunged or vacated may not be counted.

The question of use in the original sentencing proceeding is analytically different from the question of the permissible scope of a collateral attack. The Guidelines speak indirectly to the question of collateral attacks, and what they say is more open to the possibility of such an attack on an earlier, allegedly invalid, sentence than the majority's opinion admits. Section 4A1.2, Application Note 6, expressly states that, "with respect to the current sentencing proceedings," the Guidelines do not "confer any right to attack collaterally a prior conviction or sentence beyond any such rights otherwise recognized in law." (Emphasis added). The majority reads this language as if the sentence ended just before the phrase I have highlighted. (Obviously the U.S. Sentencing Guidelines are not enacting laws for the states, and so the possibility that a state might provide an avenue for a challenge does not change matters. Such an avenue would not be something "conferred" by the Guidelines.) There is no hint in that passage that if the conviction is on the books at the time of sentencing, any sentence enhancement based on it is thereafter immune from challenge. The Sentencing Commission was saying only that the Guidelines themselves were not a source of law for possible collateral attack--hardly a controversial proposition.

The question then is what kind of collateral attack on a prior state sentence used for enhancing purposes under the Guidelines is "otherwise recognized in law". In my opinion, the answer for a federal prisoner is the procedure established in sec. 2255. This conclusion does not take away with the left hand what the Supreme Court gave the district courts with the right hand in Custis: the freedom not to explore prior convictions. That would be true only if exactly the same grounds, under exactly the same

procedures, applied to sec. 2255 cases as apply to original sentencing proceedings, and that is plainly not the case. Even if a defendant may not collaterally attack her prior sentence in the original sentencing proceeding (except on narrow grounds not available to Ryan), it does not necessarily follow that such a prior sentence is immune from all attack, on any ground, at any time. That is the key point at which I part company with the majority.

Both the Supreme Court and the Sentencing Commission have concluded that there is much to be lost and little to be gained by clogging up the federal district courts with collateral attacks on prior convictions during sentencing. One could imagine an array of complaints ranging from the sufficiency of indictments, to evidentiary errors at the state proceeding, to sentencing complaints. Such attacks would bog down the sentencing process, slowing down the operation of the courts and clogging their already crowded dockets. (In fact, this was part of the Custis Court's rationale for allowing a collateral attack during sentencing proceedings for violations of the right to counsel recognized in Gideon v. Wainwright, 372 U.S. 335 (1963): lack of counsel is one of the few constitutional errors which will be readily apparent and can be discovered without poring over the record of the earlier proceedings. See 511 U.S. at 496.) Collateral attacks, in contrast, are available only on grounds far narrower than those that can be raised in the original case (either at sentencing or on appeal). Well established principles governing sec. 2255 proceedings would leave the door open to that far smaller universe of complaints: those that assert substantial federal constitutional flaws with the original state conviction. The majority overlooks this fact when it presumes that the two stages would be identical.

If sentencing hearings were the last word, always, then there would be no occasion ever to use sec. 2255 to attack a sentence. But that is not the system we have. To the contrary, countless cases hold that a petitioner can attack a federal sentence for constitutional error. See, e.g., United States v. Addonizio, 442 U.S. 178, 185 (1979); Waley v. Johnston, 316 U.S. 101, 104-05 (1942). And a subset of those cases involve challenges to prior sentences that were used to enhance the federal sentence once a prior (invalid) conviction has been expunged, reversed, or invalidated. See, e.g., Tucker, supra; Clark, supra. Applying the same rule to a previously unexamined, and presently unexaminable, prior sentence would be no different and no more disruptive than holding a hearing to re-examine

the conviction for which the prisoner is serving time--an activity that is routine for the federal courts. Complaints about ineffective assistance of counsel are regularly thrown over to collateral attack proceedings, precisely because the original trial record almost never contains the necessary information to evaluate the claim. See, e.g., United States v. Cooke, 110 F.3d 1288, 1299 (7th Cir. 1997). The fact that a new point can be raised on collateral attack that was unavailable at the original proceeding in no way undermines the significance or importance of the original proceeding, nor would it do so in the present context.

The Sentencing Commission itself was concerned with the lawfulness of prior convictions used for enhancement purposes. The Sentencing Commission did not say that any conviction--constitutionally infirm, factually erroneous, or not--can count for sentencing purposes. Instead, it carved out an exception for convictions vacated because of errors of law or fact or invalidated because of constitutional error. The majority claims that the Commission meant to exclude only those convictions invalidated prior to federal sentencing; the result, according to the majority's view, is that if the sentencing court took into account any conviction not yet invalidated at the time the federal sentence was imposed, the sentence is presumptively lawful and immune from collateral attack under sec. 2255.

That conclusion, however, simply restates the question, which is what to do in cases like Ryan's, where collateral attack is not possible either before the federal sentencing or at the time of the sec. 2255 petition. In hindsight, one assumes, Ryan probably now wishes that he had been more litigious after he pleaded guilty to the 1980 state charges, but he was not. It is now too late for him to raise any challenge in the Illinois courts to that plea. See 725 ILCS 5/122-1 (providing petition for post-conviction relief must be filed within three years from the date of conviction, at the latest). The majority holds out hope for Ryan and those in his position by speculating that some form of post-hoc relief may be available through a writ of error coram nobis. I am not nearly so sanguine. The common law writ was abolished in Illinois in 1871 by the Illinois legislature. See Ill. Rev. Stat. Ch. 83, sec. 154 (Gross 1871); People v. Touhy, 72 N.E.2d 827, 830 (Ill. 1947) (recounting history and abolition of writ). It has since been replaced with a statutory provision which, like the state post-conviction relief statute, has strict deadlines for seeking review of a sentence. In Illinois a petition for statutory coram nobis must be filed within two years of the original judgment of

conviction. See 735 ILCS 5/2-1401 (statutory coram nobis). And, because imprisonment does not constitute legal disability or duress, the two-year filing period is not tolled during the time of confinement. See Williams v. People, 202 N.E.2d 468, 469 (Ill. 1964); Morgan v. People, 158 N.E.2d 24, 26 (Ill. 1959). Thus, Ryan (and others like him whose state sentences have long since expired) has no means through which he can attack collaterally his state conviction and, if successful, seek to have his federal sentence re-opened.

I would find under these circumstances that sec. 2255 remains available to such a prisoner to serve its classic function: to allow an attack on his federal sentence on the ground that all or part of it was tainted with constitutional error. Not every prisoner will be able to allege the kind of error in a prior state conviction that would give rise to a right to a hearing in this kind of case. Indeed, most will not, both because the state courts do not commit those kinds of errors on a regular basis, and because allegations of ineffective assistance of counsel that are sufficiently serious to require a hearing are rare. But some will. Under the majority's rule, even a state prisoner who had pleaded guilty to earlier charges after 90 days in a torture chamber would still be required to serve the extra time for his federal sentence. I attach no special significance to the fact that the state may no longer offer a remedy to correct such a sentence, after some reasonable time period has passed. Once the sentence has been served, the state may take the position (as Illinois has) that it does not wish to use its scarce judicial resources for essentially a record-correction function. The person with a stake in the matter is the new federal prisoner, like Ryan, and the system that must ensure it is not relying on an unconstitutional foundation to justify imprisonment is the federal system.

The only task remaining is to apply this rule to Ryan. His allegations, backed up as they are by the deplorable later history of the lawyer who was allegedly representing him in the 1980 Illinois proceeding, are more than enough to justify a hearing on his petition under sec. 2255. I would reverse the decision below and remand his case to the district court for further proceedings.

I respectfully dissent.