NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 3, 2009
Decided March 4, 2009

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 08-3202

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 06-CR-335 |
| | |
| TEODORO MERAZ, | Lynn Adelman, |
| *Defendant-Appellant*. | *Judge*. |

**O R D E R**

Teodoro Meraz pleaded guilty to conspiracy to distribute cocaine. He received the statutory minimum sentence of 120 months' imprisonment. On appeal he argues primarily that the district court erred when it found him ineligible for safety-valve relief from the mandatory minimum. He also makes several frivolous arguments. Because the district court did not clearly err when it found him ineligible for safety-valve relief, we affirm the judgment of the district court.

In August 2005 authorities began investigating cocaine trafficking around Waukesha, Wisconsin. During an intercept of Meraz's cellular phone, investigators heard hundreds of drug-related conversations in which he negotiated cocaine sales and coordinated the storage and delivery of cocaine. Meraz and eight codefendants were indicted, and Meraz pleaded guilty to conspiracy to distribute cocaine, 21 U.S.C. §§ 846,

841(a)(1).  Meraz admitted that the conspiracy involved at least 5 kilograms of cocaine, which triggered a 10-year minimum under 21 U.S.C. § 841(b)(1)(A)(i).  The probation officer calculated a guidelines range of 188 to 235 months based on a total offense level of 35 and a criminal history category of II, but the district court sentenced Meraz to the minimum.

On appeal Meraz identifies as issues several of the guidelines-related challenges he made at sentencing.  According to Meraz, the district court used unreliable evidence to support its calculation of the drug quantity, its finding that he played a leadership role in the conspiracy, and its conclusion that he was not eligible for the safety valve.

The question of the drug quantity is not properly before this panel.  Meraz mentions the drug quantity in his statement of issues but does not develop an argument or cite any supporting cases in the body of his brief, so the issue is waived.  *See United States v. Kumpf*, 438 F.3d 785, 791 (7th Cir. 2006).  Moreover, Meraz stipulated during the plea colloquy that the quantity was at least five kilograms, *see United States v. Warneke*, 310 F.3d 542, 550 (7th Cir. 2002) (explaining that plea-colloquy admission is even stronger than jury's finding beyond a reasonable doubt), and because he received the statutory minimum, that quantity is all that matters, *see United States v. Clark*, 538 F.3d 803, 805 (7th Cir. 2008).

As the district court stated, Meraz could receive a sentence below the statutory minimum only under the safety valve or if the government moved for a reduction based on his cooperation.  The government did not file a motion, and the district court held that Meraz was ineligible for the safety valve.  To be eligible for the safety valve, a defendant cannot have more than one criminal history point, could not have used violence or a dangerous weapon, could not have caused death or serious bodily injury, could not have held a leadership role, and before sentencing must have truthfully provided the government with all information and evidence in connection with the offense.  18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2(a).  Although the district court did not mention the last of these qualifications, Meraz was automatically ineligible for safety-valve relief because, at the time of sentencing, he was unwilling to cooperate with the government against two of his codefendants who had not yet pleaded guilty.  This fact alone made him ineligible for safety-valve relief.  *See* 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5); *United States v. Olivas-Ramirez*, 487 F.3d 512, 516-17 (7th Cir. 2007).

Putting aside Meraz's unwillingness to cooperate with the government, the district court explicitly found that he was ineligible for safety-valve relief because he had more than one criminal history point and was a leader in the offense.  With respect to Meraz's criminal history, the court assigned two criminal history points for a battery conviction and a third point for a conviction for unlawful entry by an alien.  In challenging these three points, Meraz contends only that the factual support relied upon by the district court is

"unreliable" because of differing descriptions of his battery conviction and because the probation officer did not provide the name of the attorney who represented him in his case for unlawful entry. But Meraz did not contest the fact of either conviction, and his contention that the presentence report does not provide reliable evidence of either conviction is frivolous. The presentence report identifies the first conviction as "battery" and because Meraz offered no evidence to the contrary, that characterization ends the matter. *See United States v. Thornton*, 463 F.3d 693, 701 (7th Cir. 2006); *United States v. Hudspeth*, 42 F.3d 1015, 1019 n.6 (7th Cir. 1994). And while uncounseled prior convictions can be challenged if later used to increase a defendant's criminal history score, *see Custis v. United States*, 511 U.S. 485, 495 (1994); *Ryan v. United States*, 214 F.3d 877, 878 (7th Cir. 2000), the omission of the lawyer's name from the presentence report does not make the unlawful-entry conviction "uncounseled." Meraz, therefore, failed to meet his burden of proving by a preponderance of the evidence that he had no more than one criminal history point. *See Olivas-Ramirez*, 487 F.3d at 516-17 (noting that defendant bears burden of establishing eligibility for safety valve). Furthermore, Meraz's leadership role in the offense also precluded safety-valve relief. The district court's assignment of a four-level increase under U.S.S.G. § 3B1.1(a) was amply supported by Meraz's admissions during the plea colloquy and other information in the presentence report. *See United States v. Anaya*, 32 F.3d 308, 313 (7th Cir. 1994). Meraz admitted that the wiretapped phone conversations were accurate, and these conversations demonstrated his leadership role in selling cocaine and recruiting others to help store and deliver cocaine.

Meraz also argues on appeal that he was denied equal protection because he received a "disparate" sentence from some of his codefendants. According to Meraz, he does not seek absolute equivalency but rather to be measured with "the same yardstick." But this argument is without merit because, not only was Meraz sentenced to the 10-year mandatory minimum, "[n]othing is more common than for codefendants to receive different sentences." *United States v. Gammicchia*, 498 F.3d 467, 469 (7th Cir. 2007); *see also United States v. Simpson*, 337 F.3d 905, 909 (7th Cir. 2003).

AFFIRMED.