**Phillip D. SCOTT, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

No. 91–3413.

United States Court of Appeals, Seventh Circuit.

Submitted June 8, 1993.

Decided June 29, 1993.

Phillip D. Scott, pro se.

Steven M. Biskupic, Asst. U.S. Atty., Milwaukee, WI, for respondent-appellee.

Before POSNER, FLAUM, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

In 1990 Phillip D. Scott was sentenced to 57 months' imprisonment. He did not appeal. In 1991 he filed a petition under 28 U.S.C. § 2255, contending that the district judge had misapplied the Sentencing Guidelines in determining his sentence. The district judge conceded that he should not have increased Scott's criminal history category under U.S.S.G. § 5K2.6 but declined to reduce the sentence, ruling that 57 months is independently justified as an upward departure from the Guidelines' range.

The district judge addressed Scott's arguments on the merits, just as if his petition were a timely post-judgment motion for reconsideration. It is not. The judgment became final and was not appealed. Until the advent of the Guidelines, district judges had substantial authority to modify sentences they had imposed. An illegal sentence could be corrected "at any time", Fed.R.Crim.P. 35(a), and a court could reduce a sentence in response to a motion made within 120 days after the sentence became final, Fed. R.Crim.P. 35(b). A petition under § 2255 could be treated as a mislabeled invocation of Rule 35(a), a prompt petition under § 2255 as a mislabeled resort to Rule 35(b). Judges asked to revise their sentences therefore did not have to tarry over the special rules limiting collateral attacks on criminal judgments. Times have changed. The rules we cited have been repealed for persons sentenced

under the Guidelines. Nothing comparable to the former Rule 35 remains. A new Rule 35(a) allows a district court to alter sentences on remand from the court of appeals, and Rule 35(b) permits reductions on motion of the prosecutor. The only power the district judge may exercise on his own is contained in a new Rule 35(c), which permits the judge to correct a sentence only within seven days, and then only if the sentence "was imposed as a result of arithmetical, technical, or other clear error." Fed.R.Crim.P. 35(c). Once seven days have run, sentences said to be illegal or improvident or just plain too long are beyond the power of the district court to modify.

The revamped Rule 35 reflects the philosophy of the Sentencing Reform Act of 1984. District judges lost much of their discretion to select sentences, so it is no surprise that throwing oneself on the mercy of the court, as the former Rule 35(b) contemplated, is a thing of the past. Congress wanted sentences to be fixed at the outset. Parole has been abolished and good time curtailed. Only the President may commute a sentence. A short time limit on the district court's power to correct a sentence dovetails with these other changes. E.g., *United States v. Fraley*, 988 F.2d 4 (4th Cir.1993). The system established by the Sentencing Reform Act will be upset if litigants and judges just substitute § 2255 for the old Rule 35 and go on as if nothing has changed. Judges must respect the limitations on their power under § 2255. See *United States v. Springs*, 988 F.2d 746 (7th Cir.1993). The power exists— neither the statute nor the subsequent changes in the rules modify § 2255—but must be exercised according to its terms.

Section 2255 permits a court to grant relief if "the sentence was imposed in violation of the Constitution or laws of the United States, or ... the court was without jurisdiction to impose such sentence, or ... the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack". A claim that the judge misapplied the Sentencing Guidelines does not challenge the jurisdiction of the court or assert that the judge exceeded the statutory maximum. Thus Scott must be arguing either that the Guidelines are "laws", so that a sentence resting on a misapplication of the Guidelines is "imposed in violation of the ... laws of the United States", or that an improper sentence is "otherwise subject to collateral attack" even if the Guidelines are not "laws."

Whether the Guidelines are "laws" is a fascinating question. Congress did not enact them, and only the legislative branch makes "laws" under the Constitution. But they have legal effect—that is, the "force of law"—in the same way as many rules promulgated by administrative agencies under delegated authority. Twice the Supreme Court has analogized the Sentencing Commission to an administrative agency, and the guidelines to regulations. See *Stinson v. United States*, —— U.S. ——, —— – ——, 113 S.Ct. 1913, 1918–19, 123 L.Ed.2d 598 (1993); *Mistretta v. United States*, 488 U.S. 361, 371–79, 109 S.Ct. 647, 654–59, 102 L.Ed.2d 714 (1989). Are regulations issued under delegated authority the kind of "laws" to which Congress referred in § 2255? This statute permits a court to rectify grave errors, which suggests that noncompliance with a regulation, even a regulation with the "force of law," does not authorize relief under § 2255. See *White v. Henman*, 977 F.2d 292 (7th Cir.1992); *Kramer v. Jenkins*, 806 F.2d 140, 142 (7th Cir.1986).

When creating the court of appeals' power to review criminal sentences, Congress distinguished the Guidelines from "law." For example, 18 U.S.C. § 3742(f)(1) permits a court of appeals to set aside a sentence that was "imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines". Yet the Guidelines look like "law" in the same sense federal rules of procedure do. Like the rules issued under the Rules Enabling Act, 28 U.S.C. §§ 2071–76, the Guidelines are transmitted to Congress and go into force if Congress does not enact additional legislation. This suggests that an apt analogy is the treatment of the rules of procedure under § 2255.

The Supreme Court has yet to decide whether these rules are "laws" or whether violations of these rules make a sentence "otherwise subject to collateral attack." But it has twice held that only the most excep-

tional case could justify the use of § 2255 to redress a violation of such a rule. The first case, *Hill v. United States,* 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), held that a denial of allocution at sentencing, a right created by Fed.R.Crim.P. 32(a), could not be the basis of collateral relief because:

> It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure. It does not present "exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent."

368 U.S. at 428, 82 S.Ct. at 471, quoting from *Bowen v. Johnston,* 306 U.S. 19, 27, 59 S.Ct. 442, 446, 83 L.Ed. 455 (1939). Then *United States v. Timmreck,* 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979), applied the same approach to a violation of Fed.R.Crim.P. 11, which establishes procedures for the taking of guilty pleas. Only a "complete miscarriage of justice" or a "proceeding 'inconsistent with the rudimentary demands of fair procedure'" could support post-judgment relief, and deviations from Rule 11 do not fall into these categories, the Court held. 441 U.S. at 784, 99 S.Ct. at 2087. Indeed, as we observed in *Reed v. Clark,* 984 F.2d 209, 210–11 (7th Cir.1993), the Supreme Court has never approved the use of collateral relief for *any* non-constitutional error that does not deprive the court of jurisdiction.

If denials of allocution and improper colloquies in taking guilty pleas do not cause miscarriages of justice, it is hard to see how deviation from the Sentencing Guidelines could do so. Until November 1, 1987, when the Guidelines took effect, federal district judges had all but total control over sentencing. They could slap the defendant on the wrist or impose the statutory maximum sentence, with no obligation to conform to any particular theory of punishment or even to explain why they acted as they did. See *United States v. Dorszynski,* 418 U.S. 424, 443, 94 S.Ct. 3042, 3052, 41 L.Ed.2d 855 (1974); *United States v. Tucker,* 404 U.S. 443, 446–47, 92 S.Ct. 589, 591–52, 30 L.Ed.2d 592 (1972); *Gore v. United States,* 357 U.S.

386, 393, 78 S.Ct. 1280, 1284–85, 2 L.Ed.2d 1405 (1958). Cf. *United States v. Pinto,* 875 F.2d 143 (7th Cir.1989); *United States v. Masters,* 978 F.2d 281, 285–86 (7th Cir.1992). If unbounded discretion is proper, then errors in the administration of a system that curtails discretion cannot be "inconsistent with the rudiments of fair procedure". Moreover, it is far from clear that the Guidelines are designed to protect the interests of defendants (as Rules 11 and 32(a) unquestionably are designed to do). The Sentencing Reform Act instructs the judiciary to produce more consistency among sentences, for the benefit of society rather than of particular defendants, many of whose sentences rise dramatically as a result. Congress provided for enforcement of the Guidelines by an adversarial clash, and in this sense they create "rights." Still, the Sentencing Guidelines are not exactly a Bill of Rights for criminals! One full and fair opportunity to make arguments under the Guidelines—at sentencing and on direct appeal—is enough.

Over and over, the Supreme Court has emphasized the difference between direct appeal and collateral attack. See, in addition to *Timmreck* and *Hill,* cases such as *Brecht v. Abrahamson,* —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *Parke v. Raley,* —— U.S. ——, 113 S.Ct. 517, 121 L.Ed.2d 391 (1993); *Keeney v. Tamayo–Reyes,* —— U.S. ——, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Persons who believe that district judges have not enforced all of their rights must appeal; having bypassed that opportunity they may not demand belated review. *Coleman v. Thompson,* —— U.S. ——, 111 S.Ct. 2546, 2655, 115 L.Ed.2d 640 (1991); *Spurlark v. Wolff,* 699 F.2d 354 (7th Cir.1983) (in banc); *Bontkowski v. United States,* 850 F.2d 306, 313 (7th Cir.1988); *Norris v. United States,* 687 F.2d 899 (7th Cir.1982).

Whatever flaws there may have been in the district court's method, none approaches a "complete miscarriage of justice". Like the Supreme Court in *Hill* and *Timmreck,* we therefore need not decide whether claims under the Guidelines are ever "cognizable"

under § 2255 (as the jargon goes). Only extraordinary circumstances—for example, a district court's refusal to implement a provision of the Guidelines designed for the defendant's benefit, coupled with "cause" for not taking a direct appeal—even call for inquiry. Ineffective assistance of counsel could establish "cause" for not appealing, *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986), but Scott has refrained from contesting his lawyer's adequacy. The district court therefore should have dismissed his petition without revisiting its application of the Guidelines. We do not address Scott's contention that the district court erred, because we conclude that arguments of the sort Scott proffers must be advanced on direct appeal or not at all.

AFFIRMED.