In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-1245

BERNARD HAWKINS,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee*.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:10-cv-00016-JTM—**James T. Moody**, *Judge*.

ARGUED OCTOBER 29, 2012—DECIDED FEBRUARY 7, 2013

Before POSNER, KANNE, and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*. This appeal from the denial of a motion under 28 U.S.C. § 2255 to set aside the sentence in a federal criminal case presents the question whether an error in calculating the applicable guidelines sentencing range can be corrected in a postconviction proceeding, now that the guidelines are merely advisory rather than, as they formerly were, mandatory.

Bernard Hawkins has a long, long history of violent crimes, gun offenses, escapes, drug use, and violations of supervised release. In May 2003 he assaulted two U.S. marshals who were trying to arrest him pursuant to a bench warrant stemming from his failure to attend a court hearing on his latest violation of supervised release. He pleaded guilty to having committed a violent assault, with a weapon, that had inflicted bodily injury on one of the marshals. 18 U.S.C. §§ 111(a)(1), (b), 1114. Surprisingly, given the violence of his assault with a sharply pointed piece of a banister that he had ripped out of its moorings—an offense for which the statutory maximum sentence was 20 years, § 111(b)—his guidelines sentencing range would have been only 15 to 21 months' imprisonment, or possibly 24 to 30 months (the district judge found it unnecessary to decide which), had he not been a career offender within the then widely understood meaning of the career offender guideline. U.S.S.G. § 4B1.1(a).

That guideline increases the sentencing range for a defendant who has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." A criminal record of that character implies an abnormal propensity to commit serious crimes in the future and therefore a need for a greater punishment to incapacitate or deter him. *Ryan v. United States*, 214 F.3d 877, 881 (7th Cir. 2000); *United States v. Belton*, 890 F.2d 9, 10 (7th Cir. 1989), overruled on other grounds by *United States v. Garecht*, 183 F.3d 671, 675 (7th Cir. 1999). Hawkins had two prior felony convictions for escape, 18 U.S.C. § 751(a), and though both were "walkaway"

escapes rather than violent breakouts, the law in this circuit when he was sentenced for the assault was that a walkaway escape is a crime of violence. *United States v. Bryant*, 310 F.3d 550, 554 (7th Cir. 2002). That made Hawkins a career offender and so raised his guidelines range to 151 to 188 months. The judge sentenced him to the bottom of the range. The sentence, though far above the guidelines range that would have been applicable had the career offender guideline not been in play, was well below the statutory maximum for Hawkins' offense of conviction, which as we said was 20 years.

At the time he was sentenced, the guidelines were mandatory; two years later the Supreme Court in the *Booker* case declared them advisory. Hawkins's appeal from his sentence was pending in this court when *Booker* was decided, and on the authority of that decision we directed the district judge to resentence him. *United States v. Hawkins*, 136 Fed. Appx. 922 (7th Cir. 2005). On remand the judge reimposed the 151-month sentence, and we affirmed. 168 Fed. Appx. 98 (7th Cir. 2006). Three years later the Supreme Court held that an "escape" that takes the form of a failure to report is not a "violent felony" within the meaning of the Armed Career Criminal Act, 18 U.S.C. § 924(e). *United States v. Chambers*, 555 U.S. 122, 127-30 (2009). A walkaway escape is similar and is also (given *Chambers*) not a violent felony within the meaning either of that Act or of the similarly worded career offender guideline. See *United States v. Hart*, 578 F.3d 674, 681 (7th Cir. 2009); *United States v. Templeton*, 543 F.3d 378, 383 (7th Cir. 2008); *United States*

*v. Ford*, 560 F.3d 420, 426 (6th Cir. 2009). So Hawkins filed the section 2255 motion that is now before us. The district judge, in his third ruling with regard to the sentence, denied the motion on the ground that the legal error that he had committed in deeming such an escape a violent felony was not the kind of error that can be corrected after the judgment in a criminal case has become final.

Section 2255(a) authorizes postconviction alteration of a sentence that "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose . . ., or that . . . was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Hawkins refers us to *Narvaez v. United States*, 674 F.3d 621, 629-30 (7th Cir. 2011), which held that a sentence that violated the career offender sentencing guideline could be successfully attacked in a postconviction proceeding even though the sentence was shorter than the statutory maximum. But Narvaez, as our opinion emphasized, unlike Hawkins, had been sentenced when the guidelines were mandatory. *Id*. at 628-29; see also *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012); *United States v. Wyatt*, 672 F.3d 519, 523 (7th Cir. 2012). It was arguable therefore that his sentence exceeded the maximum authorized by "law." Before *Booker* the guidelines were the practical equivalent of a statute. Cf. *Scott v. United States*, 997 F.2d 340, 341 (7th Cir. 1993). Departures were permitted on specified grounds, but in that respect the guidelines were no different from statutes, which often specify exceptions.

Not only do the guidelines no longer bind the sentencing judge; the judge may not even *presume* that a sentence within the applicable guidelines range would be proper. He must determine whether it is consistent with the sentencing considerations set forth in 18 U.S.C. § 3553(a), and if he finds it is not he may not impose it even though it is within the applicable guidelines range. *Nelson v. United States*, 555 U.S. 350, 351-52 (2009); *Rita v. United States*, 551 U.S. 338, 351 (2007).

The first step in sentencing—calculating the guidelines range correctly—was not changed by *Booker*. But the step is less important now that the guidelines, including the career offender guideline, *United States v. Corner*, 598 F.3d 411, 415 (7th Cir. 2010) (en banc), are merely advisory and the sentencing judge, being forbidden to presume the reasonableness of a guideline sentence, must make an independent determination of whether a guideline sentence would comport with the sentencing standard set forth in 18 U.S.C. § 3553(a). That is a critical difference between *Narvaez* and the present case and also between the present case and *United States v. Paladino*, 401 F.3d 471, 482 (7th Cir. 2005). The judge's error in *Paladino* was to deem the guidelines mandatory rather than advisory, thus foreclosing application of the sentencing factors in section 3553(a), which might have induced the judge to give a lighter sentence. That was a more serious, a more consequential, error than in the present case. *Paladino* called it a miscarriage of justice; the lesser error in the present case does not warrant such a characterization. The judge reimposed the 151-month sentence after *Booker* had

made the sentencing guidelines merely advisory, *as he well knew* when he reimposed the sentence. No longer can it be argued that he imposed a sentence "in excess of the maximum authorized by law," since the statutory maximum sentence for Hawkins's offense was as we said 20 years (240 months). Under the regime of *Booker* the sentencing judge must comply with the command of 28 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing] set forth in" the next paragraph of section 3553(a). In resentencing Hawkins the district judge made clear that he considered the 151-month sentence that he had imposed appropriate, even though no longer commanded because the career offender guideline was no longer mandatory. And on postconviction review he confirmed that "*apart from the career offender sentencing enhancement* it was appropriate for the court to consider Hawkins' long and violent criminal history" (emphasis added) and therefore that "Hawkins' sentence was reasonable even without application of the § 4B1.1 career offender enhancement."

Hawkins argues that he was "punished for conduct that is not punishable," conduct "that is not criminal," punished in violation of "substantive law," "subjected to an illegal enhancement," and that he has been in prison "longer than the law permitted." None of these assertions is correct. What's true is that the judge made a mistake in resentencing Hawkins—he realized that the guidelines were now merely advisory but thought that under them a walkaway escape was a crime of violence. But not every error is corrigible in a postconviction pro-

ceeding, even if the error is not harmless. Suppose the probation service in recommending a sentence to a district judge makes a mistake in applying the (advisory) guideline that the judge doesn't catch. As a result he imposes an above-guidelines sentence, which he wouldn't have done had he caught the error; nonetheless the sentence is below the statutory maximum. The error could not be corrected in a postconviction proceeding. *Welch v. United States*, 604 F.3d 408, 412 and n. 4 (7th Cir. 2010); *Scott v. United States*, *supra*, 997 F.2d at 342; *Gilbert v. United States,* 640 F.3d 1293, 1323 (11th Cir. 2011) (en banc); *United States v. Mikalajunas*, 186 F.3d 490, 495-96 (4th Cir. 1999).

Neither should an erroneous interpretation of the guidelines be corrigible in such a proceeding—especially when the interpretation is discovered to be erroneous after the proceeding in which it was committed has become final through exhaustion of appellate remedies. For in such a case the challenge to the judgment depends on the retroactive application of a new rule (the corrected interpretation), and such retroactivity is disfavored because it thwarts finality in the criminal process. *Teague v. Lane*, 489 U.S. 288, 308-10 (1989) (plurality opinion). Precedential decisions come pouring out of the federal courts of appeals and the Supreme Court. If every precedential decision interpreting the guidelines favorably to a prisoner were a ticket to being resentenced, the Justice Department and the courts might be forced "continually . . . to marshal resources in order to keep in prison defendants whose trials and appeals [and sentences] conformed to then-existing

constitutional [and statutory] standards." *Id.* at 310. (It has even been suggested, though we're skeptical, that judges might be discouraged from proposing new interpretations of the guidelines for fear that federal courts would be inundated with claims for postconviction relief. See John C. Jeffries, Jr., "The Right-Remedy Gap in Constitutional Law," 109 *Yale L.J.* 87, 98-99 (1999).) Resentencing is not as heavy a burden for a district court as a complete retrial, but it is a burden, and the cumulative burden of resentencing in a great many stale cases could be considerable. About 80,000 persons are sentenced in federal district courts every year. In every case the judge must calculate a guidelines sentencing range. A change in the interpretation of a guideline could therefore, if always deemed retroactive, greatly increase both the number of section 2255 motions and the number of resentencings. There is a difference between reversing an error on appeal and correcting the error years later. An erroneous computation of an advisory guidelines sentence is reversible (unless harmless) on direct appeal; it doesn't follow that it's reversible years later in a postconviction proceeding.

We said in *Narvaez* that *Chambers* "is retroactively applicable on collateral review." 674 F.3d at 626. Finality is an important social value, but not important enough to subject a defendant to "a punishment that the law cannot impose upon him," *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004), such as a sentence that exceeds the statutory maximum sentence for his crime or a guideline ceiling that has the force of a statute because the judge is forbidden to exceed it. See *Narvaez v. United States*,

*supra*, 674 F.3d at 626; *Welch v. United States*, *supra*, 604 F.3d at 413-14; see also *United States v. Shipp*, 589 F.3d 1084, 1089, 1091 (10th Cir. 2009). An error in the interpretation of a merely advisory guideline is less serious. Given the interest in finality, it is not a proper basis for voiding a punishment lawful when imposed.

Though demoted by *Booker* to being merely advisory, the guidelines remain influential. But how influential? These days only a slight majority (53.1 percent) of sentences are within the applicable guidelines range. U.S. Sentencing Commission, "Preliminary Quarterly Data Report" 12 (3rd Quarter Release Preliminary Fiscal Year 2012 Data Through June 30, 3012), www.ussc.gov/Data_and_Statistics/Federal_Sentencing_ Statistics/Quarterly_Sentencing_Updates/USSC_2012_3rd_ Quarter_Report.pdf (visited Jan. 19, 2013). Still, the guideline ranges exert a gravitational pull on non-guideline sentences, making them closer to sentences within that range than they would be were there no guidelines. (This is what is called in psychology an "anchoring effect.") So the judge might have given Hawkins a lower sentence had *Chambers* been decided earlier. But he would not have been required to do so and we don't think that a sentence that is well below the ceiling imposed by Congress whether directly or by delegation to the Sentencing Commission should, as Hawkins argues, be considered a "miscarriage of justice" that can be collaterally attacked, just because the judge committed a mistake en route to imposing it. That's the balance the cases strike between the interest in finality and the

injustice of a possibly mistaken sentence. See, e.g., *United States v. Addonizio*, 442 U.S. 178, 186 (1979); *United States v. Timmreck*, 441 U.S. 780, 784 (1979); *Hill v. United States*, 368 U.S. 424, 428 (1962); *Scott v. United States*, *supra*, 997 F.2d at 342; *United States v. Mikalajunas*, *supra*, 186 F.3d at 495-96. *Booker* made reversible on direct review all sentences based on the belief, overturned by that decision, that the guidelines were mandatory. *United States v. Paladino*, *supra*, 401 F.3d at 483. But reversible on appeal doesn't mean reversible in postconviction proceedings, and in any event our defendant unlike *Narvaez* was not sentenced under the mandatory guidelines regime.

In *Hill v. United States*, *supra*, 368 U.S. at 428, the Supreme Court ruled that a denial of a criminal defendant's right of allocution (the right to make a statement in court before he's sentenced) was not "an error of the character or magnitude cognizable under a writ of habeas corpus" because it was "neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure." Granted, the error in *Hill* probably was harmless: "there is no claim that the defendant would have had anything at all to say if he had been formally invited to speak." *Id*. at 429. But it was not harmless in *United States v. Addonizio*, *supra*, 442 U.S. at 187, where similar language—including language quoted from *Hill*—appears. *Id*. at 185. Hawkins has not tried to catalog the subset of miscalculations of advisory

guidelines that are miscarriages of justice that can be corrected in postconviction proceedings rather than just legal errors; he argues in effect that all errors (except, presumably, harmless ones) are miscarriages of justice, and with that we disagree.

Hawkins was sentenced nine years ago. He has served almost three-quarters of the sentence that he now challenges as illegal. Yet it is "illegal" (his word, but not the right word) in the sense not that it must be nullified, but only that, were he correct in calling it a miscarriage of justice, it would have to be reconsidered. If we ordered resentencing, the judge could reimpose the identical sentence. The defendant's criminal record would justify the judge's doing that. Indeed we're surprised that the top of the guidelines range for a violent assault with a weapon by a hardened criminal on two federal officers, inflicting bodily injury, is only 21 or perhaps 30 months, a quarter or less of the statutory maximum. It would be no surprise if a sentencing judge, asked to choose between 21 (or 30) and 151 months, chose the latter.

The judgment denying the section 2255 motion filed by the defendant is

AFFIRMED.

ROVNER, *Circuit Judge*, dissenting.  Last year this court reviewed a remarkably similar case but reached the opposite result. The majority's rationale for a different result here is illusory and for this reason I respectfully dissent.

In *Narvaez v. United States*, 674 F.3d 621 (7th Cir. 2011), Luis Narvaez, like Hawkins, stood before a sentencing court as a career offender, having been convicted (just like Hawkins) twice before of escape for failing to return to confinement. *Id.* at 623. Just as with Hawkins, the sentencing court's application of the career offender guideline increased Narvaez's Guidelines range significantly, but did not increase it past the statutory maximum. *Id.* at 629. After the Supreme Court in *Chambers* clarified that a failure to return to confinement was not a crime of violence and thus did not trigger a career offender enhancement (*Chambers v. United States*, 555 U.S. 122 (2009)), Narvaez, like Hawkins, filed a post-conviction motion under 28 U.S.C. § 2255 to vacate his sentence. We noted that although sentencing errors are generally not cognizable on collateral review, Narvaez's case presented a narrow exception, one in which a miscarriage of justice entitled Narvaez to relief. *Narvaez*, 674 F.3d at 630.

The premise of the opinion in *Narvaez* was that the defendant had "an absolute right not to stand before the court as a career offender when the law does not impose that label on him." *Id.* at 629. Once Narvaez had been labeled a career offender, all of the court's calculations and assessments were filtered through that lens and consequently,

> [t]he imposition of the career offender status branded Mr. Narvaez as a malefactor deserving of far greater punishment than that usually meted out for an otherwise similarly situated individual who had committed the same offense. It created a legal presumption that he was to be treated differently from other offenders because he belonged in a special category reserved for the violent and incorrigible. No amount of evidence in mitigation or extenuation could erase that branding or its effect on his sentence.

*Id.* at 629. The *Narvaez* court was not assuaged by the fact that the defendant's sentence fell below the applicable statutory maximum sentence. *Id.* This, the court concluded, was not alone determinative of whether a miscarriage of justice had occurred. *Id.* The miscarriage, as highlighted in the block quotation above, was the branding of "career offender." Such a label, in addition to creating a legal presumption of incorrigibility (or perhaps because of it), increased dramatically the point of departure for the sentence. *Id.* "[T]o assume that the same sentence would have been imposed in the absence of the career offender provision," the *Narvaez* court explained, "is frail conjecture that evinces in itself an arbitrary disregard of the petitioner's right to liberty." *Id.* (internal citations omitted).

Despite the remarkable correlation between the facts and legal posture in *Narvaez* and this case, the majority gives *Narvaez* short shrift. It does so, it says, because Narvaez was sentenced before the Supreme Court decided *United States v. Booker*, when the Guidelines

were mandatory and thus the judge was bound by the determination to impose a particular sentence. *United States v. Booker*, 543 U.S. 220 (2005). The majority, I fear, hangs its precedent-distinguishing hat on an illusory distinction.

In *Booker*, the Supreme Court declared that the U.S. Sentencing Guidelines, which courts before had considered mandatory, were now only advisory. *Id*. at 245. *Booker* indeed initiated a sea change in sentencing procedures, but those changes do not affect the error in this case. Both before and after *Booker*, the first step in sentencing was and is for the sentencing judge to begin the sentencing proceeding by correctly calculating the applicable Guidelines range. *See Gall v. United States*, 552 U.S. 38, 49 (2007). This was "step one" before *Booker* and remains "step one" now. Our cases post-*Booker* have routinely held that "although a judge is no longer required to give a Guidelines sentence, he is required to make a correct determination of the Guidelines sentencing range as the first step in deciding what sentence to impose." *United States v. Vrdolyak*, 593 F.3d 676, 681-82 (7th Cir. 2010), (citing *Gall,* 552 U.S. at 50); *United States v. Gibbs,* 578 F.3d 694, 695 (7th Cir. 2009). The Guidelines must be the starting point and the initial benchmark. *United States v. Hurt*, 574 F.3d 439, 442-43 (7th Cir. 2009). In case after case we have emphasized that even after *Booker*, a failure to initially calculate the Guidelines properly constitutes a legal error. *See, e.g., United States v. Chapman*, 694 F.3d 908, 913 (7th Cir. 2012); *United States v. Halliday*, 672 F.3d 462, 472 (7th Cir. 2012); *United States v. Baker*, 655 F.3d 677, 683 (7th

Cir. 2011); *United States v. Long*, 639 F.3d 293, 298 (7th Cir. 2011); *United States v. Snyder*, 635 F.3d 956, 961 (7th Cir. 2011).

In short, the error that the district court made (and it did indeed err—even the majority admits that) occurred in the sequence of the sentencing procedure unaltered by *Booker*. Thus, there is no distinction between this case and *Narvaez*.

It is true, of course, that the sentencing court in this case was not required to sentence Hawkins according to the Guidelines calculations. Step two of the sentencing procedure requires the court to consider the factors enumerated in 18 U.S.C. § 3553 to evaluate whether the Guidelines range is truly proper given particular considerations. *Gall*, 552 U.S. at 49-50. But the harm to Hawkins had already occurred—before the court could even turn to the advisory part of the Guidelines. The judge could now only view Hawkins through career-offender tinted glasses, and his baseline consideration before applying the § 3553 factors was multitudes higher than it would have been otherwise.

Suppose, for example, that a sentencing court determined that because of Hawkins' mental or physical condition, a below-Guidelines sentence was warranted. If Hawkins stood before the court as a career offender, the judge would have calculated his sentence as a career offender and then considered those mitigating § 3553 factors, beginning from the 151-month benchmark. Were he not a career offender, the judge would begin by cal-

culating the 15-21[1] month range before considering any
§ 3553 factors. The majority admits that Hawkins might
not have received the same sentence had he not been
labeled a career offender. I think it rather more fair to
conclude that there was *no* chance that Hawkins would
have been sentenced to 151 months after *Chambers*.
Faced with a Guidelines range of 15-21 months, or even
24-30 months, a five to tenfold increase in the sentence
would have been shocking. In short, the injustice here
is not rectified by *Booker*. The error and prejudice
occurred in the proper calculation of the Guidelines as
a starting point—something that has not changed now
that the Guidelines are merely advisory. *Narvaez* is our
precedent and a fresh one at that.[2] This precedent
demands that Hawkins be treated in just the same
manner as Narvaez.

The majority is correct that the law has changed, but
the relevant change occurred in *Chambers* and not
*Booker*. The majority admits that the judge erred when
he thought a walk-away escape was a crime of violence,
but argues that the retroactive application of the *Chambers*

---

[1] There is some dispute as to whether the range would have
been 15-21 months, or 24-30 months. The district court found
it unnecessary to decide. In any event, both ranges are magni-
tudes less than the 151 months that Hawkins received.

[2] The *Narvaez* court emphasized that Narvaez's sentence
occurred when the Guidelines were mandatory, but that it
had no reason to consider whether or not the distinction
mattered. *Narvaez*, 674 F.3d at 628-29.

rule should not apply lest it undermine the principle of finality integral to the criminal process. Were we writing on a blank slate, we might argue against the majority's elevation of finality over fairness, as did our dissenting brothers in the 8th and 11th Circuits in indistinguishable cases, arguing that finality must not trump justice where a court must correct a career offender enhancement that all agree was imposed in error. *Rozier v. United States*, 701 F. 3d 681, 689-91 (11th Cir. (Hill, J., dissenting); *Meirovitz v. United States*, 688 F.3d 369, 373 (8th Cir. 2012) (Bright, J., dissenting) ("without finality there can be no justice . . . [i]t is equally true that, without justice, finality is nothing more than a bureaucratic achievement.") *petition for cert. filed*, (U.S. Nov. 20, 2012) (No. 12-7461). But we need not engage in this policy dispute about the virtues and failures of finality, for although the majority discusses at some length the burdens of retroactive application of a new rule, such as the one announced in *Chambers*, that ship has hoisted the mainsail and left port. This Circuit has already declared that *Chambers* (and its closely related ancestor, *Begay*) apply retroactively on collateral review. *Narvaez*, 674 F.3d at 621. *See also United States v. Wyatt*, 672 F.3d 519, 523-24 (7th Cir. 2012) (noting retroactivity of *Chambers* and *Begay*); *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012) (applying *Begay* retroactively on collateral review); *Welch v. United States*, 604 F.3d 408, 415 (7th Cir. 2010) (*Begay* rule is retroactively applied on collateral review), *cert. denied*, 131 S. Ct. 3019 (2011); *United States v. Shipp*, 589 F.3d 1084, 1090-91 (10th Cir. 2009)

(applying *Chambers* retroactively on collateral review); *Sun Bear v. United States*, 611 F.3d 925, 927 (8th Cir. 2010) (applying *Begay* on collateral review).

The majority fears that errors in the interpretation of the Guidelines, if always retroactive, would greatly increase the number of § 2255 motions and re-sentencings. The opinion in *Narvaez* did not alter the fact that ordinarily errors in calculations of the Sentencing Guidelines are not cognizable in a § 2255 motion. *Welch*, 604 F.3d at 412. An intervening change in the law made applicable retroactively, however, can indeed require a court to recognize a "miscarriage of justice," that must be correctable on collateral review. *Id.* at 412-13, nn.4 & 6. *Stanback v. United States*, 113 F.3d 651, 654 (7th Cir. 1997). *See also Davis v. United States*, 417 U.S. 333, 342 (1974). But retroactive application of a law is not the norm and depends on whether a new rule is considered to be procedural or substantive. It is clear in this Circuit that *Chambers* "falls within the class of substantive decisions that prohibit a certain category of punishment for a class of defendants because of their status or offense" and thus is a substantive rule retroactively applied. *Narvaez*, 674 F.3d at 626.

Furthermore, this is not an error that Hawkins could have raised on direct review. At the time, we would have viewed as frivolous a challenge to the established principle that a walk-away crime is a violent offense. *United States v. Chambers*, 473 F.3d 724, 726 (7th Cir. 2007), *rev'd*, 555 U.S. 122 (2009); *Wyatt*, 672 F.3d at 520 (marking the change in law after *Chambers* and noting that on the

defendant's direct appeal it had been well-established that a walk-away escape was a crime of violence); *United States v. Golden*, 466 F.3d 612, 614 (7th Cir. 2006); *United States v. Rivera*, 463 F.3d 598, 600-01 (7th Cir. 2006); *United States v. Bryant,* 310 F.3d 550, 553-55 (7th Cir. 2002); *United States v. Franklin,* 302 F.3d 722, 724 (7th Cir. 2002); *See also Stanback*, 113 F.3d at 655-656 (noting that a defendant cannot be required to posit an argument that would not have had any relevance prior to an intervening change in Supreme Court law). Thus the majority's example of a probation service recommending the incorrect sentence to an unnoticing judge is inapt. The latter error could have been addressed on direct review.

The majority further characterizes this error in calculation of a guideline as "less serious" than one that violates a statute or regulation. I suspect that the defendant sitting in prison for twelve years, rather than fifteen months because of a conceded Guidelines miscalculation would beg to differ. Few Guidelines interpretations have as pronounced an effect on a sentence than the career offender designation. Does it make any sense to the goals of justice to determine that an improperly calculated sentence that exceeds the statutory maximum by one month is a serious error worthy of post conviction relief, but that an improperly calculated error that exceeds the Guidelines range by eleven years (but is still within the statutory maximum) is not? That is why we said in *Paladino* that even where a sentence falls within the sentencing range that Congress had created for a defendant's conduct, it is a miscarriage of

justice to give a person an illegal sentence that increases his punishment, just as it is to convict an innocent person. *United States v. Paladino*, 401 F.3d 471, 483 (7th Cir. 2005). And in the context of considering prejudice under a *Strickland* analysis, the Supreme Court has instructed that *any* amount of errantly imposed actual jail time matters. *Glover v. United States*, 531 U.S. 198, 203 (2001); *United States v. Seacott*, 15 F.3d 1380, 1384 ("we are unaware of anyone who would maintain that even one additional hour of confinement, much less a day, or week of confinement, 'doesn't matter.' ")

The idea that Sentencing Guidelines are not "laws" that can be challenged in a § 2255 motion was first floated in this Circuit in *Scott v. United States*, 997 F.2d 340, 341 (7th Cir. 1993). In that case, we posed the issue as an unresolved question, but it has since crept into our case law as an accepted premise. *See, e.g., Welch*, 604 F.3d at 412 (citing *Scott* for the proposition "that deviations from the Sentencing Guidelines generally are not cognizable on a § 2255 motion.") But the Supreme Court has stated only that if an error is neither jurisdictional nor constitutional, in order to be cognizable on collateral review, it must present "exceptional circumstances" in which a fundamental defect inherently results in a complete miscarriage of justice. *See Hill v. United States*, 368 U.S. 424, 428 (1962). The Court has not addressed whether a Guidelines case could reach such exceptional levels. *Id. See also Sun Bear v. United States*, 644 F.3d 700, 707 (8th Cir. 2011) (en banc) (Melloy, J., dissenting) (noting that the issue of whether Sentencing Guidelines errors are cognizable in § 2255 proceedings

has not been decided by the Supreme Court or the 8th Circuit). In *Scott,* we surmised, without deciding, that Guidelines errors should not be redressable upon § 2255 review because, given their status, "[o]ne full and fair opportunity to make arguments under the Guidelines—at sentencing and on direct appeal—is enough." *Id.* at 342. We know, however, that Hawkins did not and could not have had one full and fair opportunity to make his argument under the Guidelines because his argument did not exist until the Supreme Court ruled in *Chambers*—after his direct appeal had concluded. It was just such an intervening change in law which convinced the Supreme Court to declare a miscarriage of justice in *Davis*, despite the Court's long history of denying such a characterization for non-constitutional, non-jurisdictional errors. *Davis*, 417 U.S. at 346-47. The *Davis* Court concluded that punishment for an act that the law does not make criminal inherently results in a complete miscarriage of justice and presents exceptional circumstances that justify collateral relief under § 2255. *Id.* at 346-47. Thus being punished as a career offender for an act that the law does not consider a prerequisite for career offender status results in a complete miscarriage of justice and presents exceptional circumstances that justify collateral relief under § 2255.

As with *Davis*, an intervening reinterpretation of the law also motivated this court in *Paladino* to find a miscarriage of justice where the change could have influenced

a judge's baseline consideration in sentencing.[3] *Paladino*, 401 F.3d at 483. Of course, the change in law in *Paladino* occurred while the case was on direct review, but that distinction blurs when one considers the posture of *Paladino*. By the time the *Paladino* cases came before this court, we had already concluded that *Booker* could not be applied retroactively. Thus a *Booker* error that occurs after a judgment becomes final cannot be corrected on post-conviction review. *Paladino,* 401 F.3d at 481. *Chambers*, however *is* applied retroactively. Moreover, because *Paladino* involved plain error review, we were implementing the very same "miscarriage of justice" standard in *Paladino* as we are in this case—that is "whether the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 481, (citing *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)). In *Paladino*, the miscarriage of justice occurred because, at sentencing, the judges were under the mistaken understanding that the Guide- lines were mandatory rather than advisory.[4] That errant

---

[3] At times we speak of *Booker* and *Chambers* as intervening changes in the law. It is a helpful shorthand for the more precise description which is that the law did not change, but rather the Supreme Court informed the courts that they had been misinterpreting the law all along.

[4] *Paladino* consolidated several cases for review and concluded that the proper procedure for remedying the error was to, "while retaining jurisdiction of the appeal, order a limited remand to permit the sentencing judge to determine whether

(continued...)

belief affected the judges' thought processes as they reviewed the sentencing options. This was not an error that could have been knowable and thus correctable until the Supreme Court decided *Booker*. The same is true in this case—a judge's errant belief about the sentencing law greatly affected his thought process. That error could not have been known and thus corrected until the Supreme Court announced its decision in *Chambers*.

The majority tells us that the error in *Paladino* was more serious and consequential, but errantly believing that the career offender enhancement applies when it does not is at least as consequential to a defendant's sentence than errantly believing that the Guidelines are mandatory when they are not. In the solid majority of *Paladino* remands, the judge sentenced the defendant exactly as before. *See, e.g., United States v. Davis*, 682 F.3d 596, 602 (7th Cir. 2012); *United States v. Harrison*, 355 Fed. Appx. 953, 954 (7th Cir. 2009); *United States v. Sebolt*, 320 Fed. Appx. 468, 468 (7th Cir. 2009); *United States v. Armstead*, 309 Fed. Appx. 11, 11 (7th Cir. 2009); *Coleman v. United States*, 309 Fed. Appx. 9, 10 (7th Cir. 2009); *United States v. Hall*, 304 Fed. Appx. 451, 452 (7th Cir. 2008); *but see United States v. Steel*, 322 Fed. Appx. 455, 456 (7th Cir, 2009). Errantly believing that the career offender enhancement applies when it does not, on the

---

[4] (...continued)
he would (if required to resentence) reimpose his original sentence." *Paladino*, 401 F.3d at 484.

other hand, creates a high probability of getting a much longer sentence. First, because the career offender enhancement imposes sentences multitudes higher than otherwise and second, because, as we noted above, the judge is required to begin sentencing with a Guidelines calculation and therefore will commence her sentencing process contemplating a range that is leagues higher than it should be.

It made no difference to the *Paladino* court that all of the sentences in that case were within the statutory sentencing range and thus could have been imposed by the judge in any event. Nor should it here. Just as we did not know in *Paladino* whether the judges would have given the same sentence if they had known at sentencing that the Guidelines were merely advisory, we cannot know whether a judge would have given the same sentence if he had known that the career offender enhancement did not apply. In this case, we know that the judge was highly influenced by the Guidelines range as he said at the *Paladino* remand:

> Over the last 16 plus years, the Sentencing Commission has promulgated and honed the Guidelines to achieve these Congressional purposes. Congress, as well, has approved those Guidelines and has indicated its view that the Guideline sentences achieve its purity. Therefore, the Court will, in exercising its discretion, give *considerable weight to those Guidelines* in determining an appropriate sentence for this defendant.

> Also in the exercise of its discretion, the Court *will only depart from those Guidelines in unusual cases* for clearly identified persuasive reasons. The defendant's request for a sentence outside of the advisory Guidelines is just not persuasive today. Even though a departure is authorized in the case, I would choose, and I do choose, not to depart, because I believe departure is just not warranted under the facts and circumstances of this case.

Appellate R. at 12, Tr. 10/28/05 at 34 (emphasis added).

This sounds much like a forbidden presumption that the Guidelines sentence is proper, and thus arguably error of an entirely different sort. *See Gall*, 552 U.S. at 50. In any event, it certainly demonstrates how, even under an advisory Guidelines system, a mistake in the Guidelines calculations anchored the judge to the higher range and virtually assured Hawkins a sentence ten times greater than one he would have received otherwise. The majority notes that the Guidelines remain influential and asks rhetorically, "how influential?" The answer in this case is clear. The district court judge "g[a]ve considerable weight to the Guidelines," and noted that he would only "depart" (a word no longer relevant post-*Booker*, and one that might indicate an inappropriate loyalty to the Guidelines) "from those Guidelines in unusual cases." Appellate R. at 12, Tr. 10/28/05 at 34.

The majority includes quotations (without citation) to language implying that at resentencing the judge would have imposed the same sentence even without the

career offender enhancement. *Supra* at 6. But the quoted language comes from the district court's order five years later on post-conviction review. The district court judge's posthoc reasoning in denying collateral review is surely not a reliable indicator of what he would do if ordered to sentence Hawkins de novo without the career offender enhancement, particularly given the dispositive weight the court appears to have given the Guidelines at the time of the *Paladino* remand. It is one thing for the judge to say, five years later, that he would have sentenced Hawkins to 151 months regardless, and another for him to actually begin with a 15-21 month range and then decide to increase the sentence by another decade.

This case, which demands reversal, will open no flood gates as the majority fears. It involves, first, an uncontroverted mistake of law by the district court—that is declaring Hawkins a "career offender" when he was not; second, an inability to address the error on direct review due to an intervening change in the law, which is, third, applicable retroactively. *See Sun Bear*, 644 F.3d at 712 (Melloy, J., dissenting). Finally we note again that the application of the career offender enhancement triggers sentencing ranges magnitudes higher than the unenhanced range.

The majority, it seems, has no problem ignoring the error and allowing Hawkins to be sentenced under a career offender guideline that should not apply to him, noting that he is a "hardened criminal" guilty of a "violent assault." And while the majority is quick to describe the "escape" attempt that turned violent when

Hawkins was high on drugs, the majority neglects to inform the reader that the other escape that qualified Hawkins as a career offender occurred when Hawkins merely signed himself out of a halfway house and failed to return. But we need not dwell on these facts. Whether a crime is a violent felony is determined by how the law defines it and not how an individual offender might have committed it on a particular occasion. *Begay v. United States*, 553 U.S. 137, 141 (2008). Moreover and more compellingly, this decision will not apply only to Hawkins, but also to the mild-mannered, non-violent offender who panics and fails to return to the halfway house after a day at work. Because this Court has determined that an error in calculating the correct Sentencing Guidelines for such a walk-away offender is not a miscarriage of justice and not a cognizable error, even where the error increases an offender's sentence tenfold, our mild-mannered, non-violent offender could spend not one year in prison, but twelve and a half when neither Congress, nor the Sentencing Commission, nor likely even the district court that sentenced him thinks he should be there. *See Wyatt*, 672 F.3d at 524. That seems a poor use of resources and, more importantly, a terrible miscarriage of justice.

For this reason, I would reverse the decision of the district court and remand to the district court to allow Mr. Hawkins to stand before it without the errantly imposed black mark of a career offender.